**Noah SISSON, #40431, Petitioner,**

v.

**Ray PAGE, Warden, Respondent.**

**Civ. No. 67–321.**

United States District Court
W. D. Oklahoma.

Jan. 23, 1968.

John Joseph Snider, Oklahoma City, Okl., for petitioner.

Charles L. Owens, Asst. Atty. Gen., Oklahoma City, Okl., for respondent.

MEMORANDUM OPINION

DAUGHERTY, District Judge.

■ The Petitioner is an Oklahoma prisoner serving a life sentence imposed by the District Court of Payne County, Oklahoma, on November 2, 1939, on a plea of guilty for the crime of rape in the first degree. In his Petition for Writ of Habeas Corpus herein, the Petitioner raises five complaints as follows: (1) Petitioner was denied his right to counsel at his first District Court arraignment, (2) Sentence was imposed by duress, coercion and threat of lynch mob, (3) Petitioner was denied confrontation of witnesses, (4) No mental observation was made of the Petitioner until after he was sentenced, and (5) Petitioner was extradited from the State of Texas to the State of Oklahoma without extradition papers. The burden of proof herein is on the Petitioner. Beeler v. Crouse (Tenth Cir. 1964), 332 F.2d 783.

The Respondent acknowledges that the Petitioner has exhausted his state remedies on each of the above complaints except (5) regarding extradition. See Ex parte Sisson, 90 Okl.Cr. 47, 210 P.2d 185

(1949) and Sisson v. State, 426 P.2d 379 (Okl.1967) for exhaustion of state habeas remedies. With reference to his complaint regarding extradition, the Petitioner acknowledges that he has not exhausted state remedies on this complaint and it was agreed in open court at the trial that the Court lacked jurisdiction to consider Plaintiff's complaint (5) regarding extradition for failure of Petitioner to exhaust state remedies thereon. Therefore, no consideration will be given to the same. The Court appointed counsel for the Petitioner and conducted an evidentiary hearing on the Petition.

From the evidence presented, the Court finds that the Petitioner was arrested for the crime involved in the State of Texas and returned to the county jail of Payne County, Oklahoma, situated in Stillwater, Oklahoma. Sometime after being so incarcerated (the evidence doesn't show when), it appears that the Petitioner signed a written confession of the crime involved in this case and two other similar offenses. This confession is not in evidence in this case but it is set out in detail in Ex parte Sisson, supra. On October 26, 1939, the Petitioner was arraigned in person in the County Court of Payne County, Oklahoma, where the warrant and complaint were read and he was informed of his constitutional rights. The Petitioner waived preliminary hearing and the County Judge bound the Petitioner over to the District Court for trial. The Petitioner did not have counsel at this proceeding. There is no evidence presented to the Court that the Petitioner made any incriminatory statements at this proceeding and it is not shown that any of his constitutional rights were prejudiced at this proceeding. Pearce v. Cox (Tenth Cir. 1965), 354 F.2d 884, cert. denied 384 U.S. 976, 977, 86 S.Ct. 1869, 1871, 16 L.Ed.2d 685, 686 (1966). On the same day, October 26, 1939, the Petitioner was arraigned in open court in person in the District Court of Payne County, Oklahoma. Here the information was read and he was again informed of his constitutional rights according to the Court Minutes. The Petitioner entered a plea of not guilty at that time, whereupon the Court appointed two capable attorneys to represent the Petitioner. These attorneys were not present during this District Court arraignment but were appointed immediately after the plea of not guilty. They conferred with the Petitioner in jail the following day and on three further occasions including the proceeding on November 2, 1939, before the District Court when the Petitioner withdrew his plea of not guilty, entered a plea of guilty, and was sentenced.

One of the court appointed attorneys for the Petitioner testified before this Court to the effect that he conferred with the Petitioner the first time for approximately an hour and in total conferred with him for approximately two hours and that the Petitioner himself decided to enter his plea of guilty notwithstanding the advice of this attorney and co-counsel that he not plead guilty but stand trial. This attorney testified that no promises were made to the Petitioner and no force or threats were used on the Petitioner to cause him to change his plea of not guilty to a plea of guilty, but that he did so of his own free and voluntary will. This attorney also testified that notwithstanding the claim of the Petitioner that he changed his plea from not guilty to guilty by reason of the fear of mob violence and a threat of lynching, the Petitioner made no such claim to this attorney at any time and this attorney was not in the least concerned about the Petitioner being endangered by mob violence or lynching. This attorney pointed out that the crime involved occurred in the City of Cushing, Oklahoma, which, while in the same county as Stillwater where the Petitioner was confined, is 25 miles distant. This attorney testified that he was aware of no mob or threats or any such activities around the jail or in Stillwater or in Cushing, Oklahoma. The Petitioner himself testified that no direct threats were made by anyone to him and he neither saw nor heard a mob. This attorney

further testified that during his four conferences with the Petitioner, including the final appearance in court, he did not observe anything in the Petitioner's conduct or speech or behavior which led him to believe that the Petitioner was suffering from any kind of mental disease or incompetency. The Petitioner testified that he attempted suicide during the period of his confinement in the county jail of Payne County, Oklahoma, but the Petitioner's attorney did not recall any such incident. With reference to the confession of the Petitioner, this attorney testified that he learned of the same but had no facts or information that the same had been illegally obtained and that the Petitioner did not at any time complain to him that it had been obtained by any illegal means. The Petitioner testified that he did not recall giving a confession and therefore supplied no information as to when the same was made or the circumstances surrounding the same. The attorney testified that he knew of no grounds for, and did not file a motion to suppress the confession.[1]

█ As to complaint (1) above, it is true that counsel was not appointed for the Petitioner until after he had entered a plea of not guilty at his District Court arraignment. But there has been no evidence presented to the Court that at this arraignment the Petitioner made any incriminatory statements or did anything prejudicial to his constitutional rights or that statements were then made against the Petitioner. The Petitioner entered a plea of not guilty, whereupon the Court promptly appointed not one but two capable attorneys to represent the Petitioner. Under Oklahoma law, whatever counsel could have done at arraignment on a defendant's behalf, counsel is free to do thereafter. 22 Oklahoma Statutes § 451 et seq.[2] These attorneys conferred with and represented the Petitioner for a week until he entered a plea of guilty on November 2, 1939. In these circumstances, the Petitioner's constitutional rights were not violated.[3] Johnson v. United States (Tenth Cir. 1964), 333 F.2d 371; United States ex rel. Hussey v. Fay (S.D.N.Y.1963), 220 F.Supp 562; Marshall v. United States (Tenth Cir. 1963), 321 F.2d 897, cert. denied 370 U.S. 958, 82 S.Ct. 1606, 8 L.Ed.2d 824; see also 5 A.L.R.3d 1269 annotation.

█ As to complaint (2) that his plea of guilty was entered by reason of duress,

1. The rule in Miranda v. State of Arizona, 384 U.S. 496, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966), is not retroactive, Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed. 2d 882 (1966), and does not apply to this case.

2. Particularly 22 Oklahoma Statutes § 465 which provides that the arraignment consists of reading the indictment or information to the defendant and asking him whether he pleads guilty or not guilty thereto; 22 Oklahoma Statutes § 502 where the only pleading on the part of a defendant is either a demurrer or a plea, and 22 Oklahoma Statutes § 503 where both the demurrer and the plea must be put in open court either at time of the arraignment or at such other time as may be allowed; 22 Oklahoma Statutes § 561 where change of venue may be applied for at any time before the trial is begun; 22 Oklahoma Statutes § 517 which allows the Court to permit a plea of guilty to be withdrawn at any time before judgment, and 22 Oklahoma Stat-

utes § 492 which allows the Court at any time to permit a motion to be filed to set aside the indictment or information or plead thereto.

3. The case at bar is clearly distinguishable from Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961). Under Alabama procedure, a defendant in a criminal case loses several important rights and defenses if the same are not asserted at time of arraignment. This is not so in Oklahoma. The procedure in Oklahoma is like that in New York as stated in United States ex rel. Hussey v. Fay (S.D.N.Y.–1963), 220 F. Supp. 562.

The case at bar is also clearly distinguishable from Berryhill v. Page (Tenth Cir.–1965), 349 F.2d 984. In Berryhill the accused plead guilty and the record did not reflect an offer of the trial judge to appoint counsel. In the case at bar, the accused did not plead guilty but plead not guilty and the trial judge immediately appointed counsel.

coercion and threat of lynch mob, the Court finds and concludes from the evidence presented that such was not the case. The Petitioner has testified that this is the reason why he changed his plea of not guilty to guilty. But his attorney who also testified in the case, said that this was not so, that he (the attorney) was not concerned in the least about the safety of the Petitioner, that the Petitioner made no statement to him that he was fearful of his life at the hands of a mob and that the change of plea by the Petitioner was made by the Petitioner himself in the hopes of avoiding a death sentence. It was the testimony of the Petitioner in this connection that two individuals whom he could only identify as being officers, told him during his confinement in jail that his life was in danger from a mob, and that if he did not plead guilty he would be lynched. This information was not relayed by the Petitioner to his attorneys, according to the testimony of one of said attorneys. The Petitioner admits that he received no threats directly from anyone and did not see or hear a mob. There is no evidence to support the assertion of the Petitioner that he changed his plea in fear of mob violence and lynching except the testimony of the Petitioner himself and in the circumstances of the case, including Petitioner's inability to identify the alleged officers, the Court is led to the finding and conclusion that his testimony is not true in this respect. From a consideration of all the testimony bearing on the matter of his change of plea from not guilty to guilty, the Court finds that the same was not brought about by duress, coercion, or threat of lynch mob, but was done voluntarily, understandingly and intelligently by the Petitioner after having conferred with counsel over a period of approximately a week prior to his plea of guilty, and being fully advised of the charge against him, his rights and the consequences of his plea.

■ As to complaint (3) that the Petitioner was denied confrontation of witnesses against him, the Court finds that this complaint is without merit, since as above determined the Petitioner entered a voluntary and intelligent plea of guilty to the crime of which he was charged. A voluntary and intelligent plea of guilty by an accused constitutes a waiver of his right to be confronted by witnesses who would testify against him. This is because a voluntary plea of guilty acknowledges guilt and dispenses with the presentation of witnesses against the accused. Ex parte Gault, 78 Okl.Cr. 172, 146 P.2d 133 (1944), cert. denied 325 U.S. 873, 65 S.Ct. 1414, 89 L.Ed. 1991.

■ As to complaint (4) that no mental observation was made of the Petitioner until after he was sentenced, the Petitioner enlarged this complaint at the trial to include the claim that he was mentally incompetent at the time he entered his plea of guilty. Treating this complaint as so enlarged, habeas corpus is an available remedy to test the mental capacity of the defendant at the time of the entry of a plea of guilty and at the time of being sentenced. Nunley v. Taylor (Tenth Cir. 1964), 330 F.2d 611; Nipp v. United States (Tenth Cir. 1963), 324 F.2d 711; Ellison v. United States (Tenth Cir. 1963), 324 F.2d 710; Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956); Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). First, as to his original complaint, there was a state procedure available for mental observation before trial or sentence,[4] but the Petitioner and his attorneys did not request that this procedure be utilized. Nor was such procedure denied the Petitioner by the Court. Petitioner made no claim of mental disability to his attor-

---

4. 22 Oklahoma Statutes 1941, § 1162 provided:
   "When an indictment or information is called for trial, or upon conviction the defendant is brought up for judgment, if a doubt arises as to the sanity of the defendant, the court must order a jury to be impaneled * * * to inquire into the fact." See Rice v. State, 80 Okl.Cr. 277, 158 P.2d 912 (1945).

neys according to the testimony of one of said attorneys who also testified that he observed nothing abnormal or unusual in the Petitioner, his behavior, speech or intelligence, and observed nothing that suggested that the Petitioner was suffering from a mental disorder. In these circumstances, including the fact that the Court apparently was not of the opinion that the Petitioner needed a mental examination, no federal constitutional right of the Petitioner was violated in this regard. As stated in Malone v. Crouse (Tenth Cir. 1967), 380 F.2d 741, at p. 746, this is a question of state law and is not related to Petitioner's right to a fair trial under the United States Constitution.

 However, as above indicated, this Court will consider in this habeas proceeding the claim of Petitioner that he was mentally incompetent when he entered his plea of guilty in state court. The Petitioner testified to an oil field accident some time prior to the crime involved herein which he thinks may have caused mental incompetency, and points to the fact that after being sent to the penitentiary and being confined therein for approximately six months he was sent to a state mental institution where he was confined for approximately five years before being returned to the state penitentiary. The evidence discloses that the Petitioner did not complain to his attorneys of having a mental problem during the period of a week that they represented him, nor did the attorney who testified herein find anything in the Petitioner's behavior which suggested to him that he should ask for a mental examination of the Petitioner. The Petitioner had not been found incompetent by a court and had not been confined in a mental institution prior to the events involved herein. It was the testimony of Petitioner's attorney that other than being nervous, which he attributed to the seriousness of the offense with which Petitioner was charged and the possibility of a death sentence, the Petitioner appeared normal, talked normally, understood what the attorney told him, and

gave no indications of mental disease or mental incompetency at any time. There was no expert medical testimony presented to the Court by either side. The Court, therefore, finds from the evidence presented that the Petitioner at the time of his plea of guilty and sentencing herein was not mentally incompetent but was in possession of his mental faculties, understood the nature of the proceedings in which he was involved, and was able to assist his counsel in the defense of the case. Therefore, from the evidence presented the Court makes the factual determination that the Petitioner was not mentally incompetent when he entered his plea of guilty and was sentenced herein.

In view of the foregoing, the Court finds that the Petitioner has failed to sustain his burden to show that he is entitled to relief in the nature of habeas corpus on any ground raised. Accordingly, his Petition for a Writ of Habeas Corpus in this Court should be dismissed. Counsel for Respondent will prepare an appropriate judgment to this effect and submit the same to the Court.