Ronald Thomas KOONCE, Petitioner,

v.

The STATE of Oklahoma and Ronald A. Crisp, Warden, O.S.P., Respondents.

No. H-76-933.

Court of Criminal Appeals of Oklahoma.

May 16, 1977.

Dan A. Erwin, Chandler, Court-appointed, for petitioner.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., for respondents.

BUSSEY, Presiding Judge:

Petitioner, Ronald Thomas Koonce, upon a plea of guilty; was convicted for the offense of Murder, Case No. C–3299, in the District Court, Lincoln County. He was thereupon sentenced to life imprisonment on the 8th day of November, 1972. Subsequently, on June 24, 1976, the Petitioner filed a pro se application in the District Court, Lincoln County, for post conviction relief attacking the validity of that plea of guilty for certain constitutional infirmities. An evidentiary hearing was held on September 9, 1976, before the Honorable Donald E. Powers, in the Lincoln County District Court. Upon hearing sworn testimony and an examination of the court records, Judge Powers found the Petitioner, prior to the entrance of his plea of guilty, had been fully advised of his constitutional rights and said rights were knowingly and intelligently waived. An Order was entered denying the application for post conviction relief, and from that Order, the Petitioner perfected an appeal to this Court. On November 18, 1976, in Case No. PC–76–778, this Court entered an Order dismissing Petitioner's application. Thereafter, on December 6, 1976, this Court entered an Order transferring the records and treating said application as the instant habeas corpus proceeding (H–76–933).

Petitioner, Ronald Thomas Koonce, hereinafter referred to as defendant, challenges the trial court's findings of fact and conclusions of law, claiming the record does not support the trial court's findings that the defendant, prior to the entrance of his plea of guilty, was sufficiently advised of his constitutional rights, specifically his right to a jury trial, his right of confrontation and his privilege against compulsory self-incrimination.

Defendant claims that the court failed to comply with the strict requirements of *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) and *Copenhaver v. State,* Okl.Cr., 431 P.2d 669 (1967), at the time he entered his plea of guilty. The court did not inform the defendant of certain rights specifically mentioned in the case of *Boykin v. Alabama,* supra.

In *Boykin,* the United States Supreme Court reversed a conviction based upon a plea of guilty for the reason that the record did not disclose that the defendant volun-

tarily and understandingly entered such a plea. In *Boykin,* the Supreme Court noted that, "A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction . . . ." Thus, the constitutional ". . requirement that the prosecution spread on the record the prerequisites of a valid waiver is no constitutional innovation. . ." 395 U.S. at 242, 89 S.Ct. at 1711. The Supreme Court went on to say:

"Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the fourteenth. *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653. Second, is the right to trial by jury. *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491. Third, is the right to confront one's accusers. *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923. We cannot presume a waiver of these three important federal rights from a silent record." 395 U.S. at 243, 89 S.Ct. at 1712.

This Court, in *Copenhaver v. State,* supra, even before the *Boykin* opinion, set forth specific guidelines to be followed on the trial court's acceptance of the defendant's plea of guilty. In *Copenhaver,* later cited with approval in *Smith v. Oklahoma City,* Okl.Cr., 513 P.2d 1327 (1973), we stated: ". . . In all future cases where there is a plea of guilty, the procedure above set forth should be followed; provided, however, that prior to accepting a plea of guilty, the defendant should be informed of the nature and consequences of such plea, of his right to court-appointed counsel, if indigent, and his right to a jury trial, and the record should reflect an affirmative waiver of all of these rights prior to the acceptance of a plea." [footnote omitted]

Citing *Boykin,* defendant claims that it is necessary when entering a plea of guilty, for the trial court to expressly advise the defendant of these three rights to obtain his waiver before a plea of guilty can be valid. We disagree with this proposition. The *Boykin* opinion states that these federal rights are involved in entering a guilty plea and their waiver cannot be presumed from a silent record. The Supreme Court did not say that a trial court must expressly mention these three federal rights before there can be a valid guilty plea. *Boykin* was reversed by the Supreme Court "because the record does not disclose that the defendant voluntarily and understandingly entered his pleas of guilty." 395 U.S. at 244, 89 S.Ct. at 1713. Thus, the test established by *Boykin* is whether a guilty plea was voluntarily and understandingly entered. Therefore, if the record establishes that the plea was so entered, then the record is not silent as to the waiver of those three expressed federal constitutional rights. "A voluntary and intelligent plea of guilty by an accused constitutes [a] waiver of his right to be confronted by witnesses who would testify against him." *Sisson v. Page,* 279 F.Supp. 614, 615 (W.D.Okl.1968).

As this Court stated in *Tipton v. State,* Okl.Cr., 498 P.2d 429 (1972):

". . . The court expressly advised defendant of many of his rights, including the right to trial by jury. Although the trial judge did not expressly mention defendant's privilege against self-incrimination and right of confrontation we are of the opinion that his voluntary and intelligent guilty plea constitutes a waiver of these rights. . . ."

The record of the evidentiary hearing held on the defendant's application for post conviction relief, reflects that the defendant's counsel, prior to defendant's plea of guilty, advised the defendant of the various constitutional rights and specifically his right to trial by jury:

"Q. (by Mr. Cornwell:) Calling your attention again to November 8, 1972, which you have already testified and the record reflects was the date that Mr. Koonce entered his plea of guilty in Case No. C-3299, prior to Mr. Koonce entering his plea of guilty in that particular case, did

you advise him as to his rights in relation to a trial in that case?

" * * *

"A. I did advise Mr. Koonce as to his rights in that proceedings that we were having on that date.

" * * *

"Q. Specifically what did you advise him in relation to his right to a trial by jury in this case?

" * * *

"A. I advised with Mr. Koonce regarding his right to a trial in the remaining case. That we could have a trial like we had before in the case which we did try and appealed. And that if he pled guilty—

" * * *

"A. That he could change his plea from not guilty to guilty, and that all the Court could impose on him at that time would be a maximum of life imprisonment by reason of the decision in the companion case. And that he had a right to a trial, and if he wanted it, we could make the same defense that we did in the other case.

" * * *

"Q. Now, Mr. Cargill, after you had explained the matters you had gone over with Mr. Koonce, did you indicate to him the decision was his alone to make? As to any plea of guilty or not guilty?

" * * *

"I don't know what the words I said it. [sic] I said it would have to be a voluntary act on his part, and he would have to say what he wanted to do. And he did want to change his plea to a plea of guilty. I don't remember the exact words used." [Tr. 27–31]

From the foregoing answers of defendant's retained counsel, it is apparent that said defendant was advised by counsel of all his constitutional rights prior to entering a plea of guilty. The trial court, in considering the testimony of counsel during the post conviction proceeding, followed the procedure which was approved by the Supreme Court of the United States in *North Caroli-*

*na v. Alford,* 400 U.S. 25, 27 L.Ed.2d 162, 91 S.Ct. 160 (1970). In that case, testimony was taken in a hearing on post conviction relief and the Supreme Court stated, in footnote 3:

> "At the state court hearing on post-conviction relief, the testimony confirmed that Alford had been fully informed by his attorney as to his rights on a plea of not guilty and as to the consequences of a plea of guilty. Since the record in this case affirmatively indicates that Alford was aware of the consequences of his plea of guilty and of the rights waived by the plea, no issues of substance under *Boykin v. Alabama,* . . ., would be presented even if that case was held applicable to the events here in question."

In addition to the foregoing, the State introduced the record in CRF–3398, a companion case in which the defendant was advised of his constitutional rights to a jury trial, to be confronted with witnesses appearing against him, and he exercised the same. Said trial resulted in a conviction [1] and the defendant appealed the conviction to this Court and the same was affirmed in *Koonce v. State,* Okl.Cr., 456 P.2d 549 (1969). On October 26, 1972, we modified the judgment and sentence to life imprisonment, prior to the entry of the plea of guilty in Case No. C–3299 on November 8, 1972.

We are of the opinion, and therefore hold, that when a defendant is charged with two murders growing out of the same transaction, is advised of all his constitutional rights, exercises those rights in one of the murder cases, proceeds to trial, is convicted by a jury, appeals said conviction which is affirmed and later modified, and thereafter freely and voluntarily enters a plea of guilty to the companion murder charge after having been advised of his constitutional rights by counsel prior to entering said plea, he cannot successfully collaterally attack the judgment and sentence entered on his plea of guilty merely because at the time of the entry of said plea the trial court did not meticulously explain all of the con-

---

1. Defendant was sentenced to death by electrocution.

stitutional rights of which the defendant was already aware.

We here take note that the case was set for jury trial and the defendant freely and voluntarily withdrew his plea of not guilty and entered a plea of guilty admitting the murder, as evidenced from the following in the transcript of the proceedings on the plea of guilty:

"THE COURT: You have previously been arraigned and entered a plea of Not Guilty to the charge. The case is now ready to stand trial on your plea of Not Guilty. Your attorney now advises me you want to withdraw your plea, is that right?

"THE DEFENDANT: That is so.

"THE COURT: And what is your plea now?

"THE DEFENDANT: I plead guilty.

"THE COURT: You understand when you do that, you are admitting you did what is charged here?

"THE DEFENDANT: Yes, I understand.

"THE COURT: Are you telling us now that you did on or about the 10th day of June, 1967, commit the Crime of Murder against one Mary Alice Valliquet in this County?

"THE DEFENDANT: Yes.

"THE COURT: With the premeditated design to affect the death of her?

"THE DEFENDANT: May I say something?

"THE COURT: Go ahead?

"THE DEFENDANT: Due to the court records and everything and what happened that night, I committed the crime, but I have no recollection of it. If there was any way to undo it, I would, but I am guilty.

"THE COURT: You are entering this plea with full knowledge you are admitting it?

"THE DEFENDANT: Yes, I am.

"THE COURT: Is this plea made freely and voluntarily on your part?

"THE DEFENDANT: It is.

"THE COURT: Have you been threatened, coerced or intimidated by anyone to enter this plea?

"THE DEFENDANT: No.

"THE COURT: You understand that on your plea of Guilty to this charge, the only punishment now is life imprisonment? You understand that?

"THE DEFENDANT: Yes, I do.

"THE COURT: That if you enter a plea of Guilty we will have to sentence you to life imprisonment, you understand that?

"THE DEFENDANT: Yes.

"THE COURT: You want to plead Guilty?

"THE DEFENDANT: Yes, I do." [Tr. 4–5]

In accordance with the authority above cited and the evidence before us, we are of the opinion, and therefore hold, that the Petition for Habeas Corpus should be, and the same is hereby, DENIED.

BLISS and BRETT, JJ., concur.