[Crim. No. 13623. First Dist., Div. Two. Aug. 6, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
RAYMOND M. HAMILTON, Defendant and Appellant.

COUNSEL

Garella, Braun & Martel, Emil Roy Eisenhardt and Victor J. Haydel III for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and Sanford Svetcov, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ROUSE, J.—Defendant appeals from an order of the Superior Court of Alameda County which was rendered after an evidentiary hearing. The purpose of such hearing was to determine the voluntariness of a particular statement made by defendant.

The factual background of this appeal shows that 15 years ago, in 1960, defendant was convicted of murder in the California superior court and sentenced to death. In 1961, the conviction was reversed by the California Supreme Court on grounds which have no bearing upon the instant appeal. (*People* v. *Hamilton* (1961) 55 Cal.2d 881 [13 Cal.Rptr. 649, 362 P.2d 473].)

Defendant was retried and again convicted of murder and sentenced to death. In 1963, the California Supreme Court affirmed the conviction as to the issue of guilt, but reversed as to the issue of penalty and remanded the cause for retrial and redetermination of the question of penalty. (*People* v. *Hamilton* (1963) 60 Cal.2d 105 [32 Cal.Rptr. 4, 383 P.2d 412].) In its opinion, the Supreme Court held that the trial court had erred in admitting evidence that defendant had offered to plead guilty in return for a life sentence. However, the court held that this error was harmless and did not require reversal of the conviction under article VI, section 4½, of the California Constitution. In December 1964, defendant was resentenced by the trial court to life imprisonment.

In 1966 and again in 1967, the California Supreme Court denied defendant's petitions for writs of habeas corpus. Also in 1967, the United States Supreme Court denied defendant's petition for a writ of certiorari. (*Hamilton* v. *California* (1967) 389 U.S. 921 [19 L.Ed.2d 271, 88 S.Ct.

243].) In 1968, the California Supreme Court denied defendant's third petition for a writ of habeas corpus.

On April 29, 1969, defendant filed a petition for a writ of habeas corpus in the federal district court. Following the filing of an order to show cause and a traverse, an evidentiary hearing was held on September 4 and 16, 1970.

On August 2, 1971, after additional briefing by both sides, the federal district court filed a memorandum opinion and an order granting the petition for a writ of habeas corpus. Judge Zirpoli of the federal district court held that the defendant had alleged facts which, if true, would render his offer to plead guilty involuntary and that the evidence produced at the hearing was conflicting as to whether the offer was involuntary. The district court judge further held that the offer to plead guilty should have been treated as a confession and that the state trial court should have followed the procedure outlined in Jackson v. Denno (1964) 378 U.S. 368 [12 L.Ed.2d 908, 84 S.Ct. 1774, 1 A.L.R.3d 1205], and should have passed upon the voluntariness of defendant's offer before admitting it into evidence at his second trial. The federal district court then granted defendant's petition for a writ of habeas corpus and ordered that defendant be released from custody within 60 days unless the State of California indicated its intention to give defendant a new trial or an evidentiary hearing on the issue of voluntariness.

The order of the federal district court was affirmed by the United States Court of Appeals for the Ninth Circuit on December 21, 1972, and a rehearing was denied on January 29, 1973.

On May 7, 1973, the People filed in the Alameda County Superior Court a motion for an order convening an evidentiary hearing to determine the following three questions: (1) whether defendant Hamilton's offer to plead guilty was voluntary or involuntary; (2) whether the introduction into evidence of said offer at defendant's trial was prejudicial or harmless beyond a reasonable doubt; and (3) whether defendant's failure to raise the voluntariness issue at trial or on appeal was a deliberate bypass or waiver of available state remedies.

On May 17, 1973, the superior court ordered an evidentiary hearing to determine each of the three issues specified. Thereafter, defendant moved to modify this order so as to provide that the sole issue which was to be determined at the hearing would be the voluntariness of defen-

dant's offer to plead guilty. The People opposed the motion for modification, and on August 1, 1973, the motion was denied.

The evidentiary hearing was held on August 1 and December 13, 1973, and the issues were thereafter fully briefed.

On July 8, 1974, the superior court filed its order and judgment, together with findings of fact and conclusions of law. The superior court determined that defendant's offer to plead guilty was voluntarily made; that the introduction of the offer to plead as an admission of guilt was harmless beyond a reasonable doubt; and that defendant's failure to raise the voluntariness issue at trial or on appeal was a tactical, deliberate bypass of available state remedies. Defendant filed notice of appeal from this order on July 23, 1974.

■ Defendant does not challenge the sufficiency of the evidence in support of any of the superior court's findings. He makes but one contention on appeal, namely, that since the evidentiary hearing was compelled by the order of the federal district court, which specifically provided only that a hearing on the issue of voluntariness be held, the superior court was not entitled to pass upon the two additional questions of prejudice and bypass of state remedies. Defendant cites no authority in support of this argument. We conclude that his contention is wholly without merit.

In *People* v. *Fasanella* (1971) 14 Cal.App.3d. 1004 [92 Cal.Rptr. 655], the defendant had been convicted of two felonies more than ten years earlier, in 1958 and 1960, and had taken no timely appeal in either case. However, in 1969, the federal district court granted him a writ of habeas corpus based upon his claim that he had failed to appeal because he had not been informed of the steps to be taken. The federal district court ordered that the State of California either provide the defendant with an appeal or vacate his conviction and retry him. Failing either alternative, the federal district court ordered that the defendant's conviction be vacated and that he be released. The California appellate court stated, "The order of federal Judge Zirpoli does not purport to confer upon defendant any right of appeal, or to impose upon this court any duty to hear the cases. The order simply means that unless the state provides an appeal or a new trial, the federal judge will vacate the conviction and release the prisoner." (P. 1009.) The court further stated, "It is a matter of the gravest concern to the People of California if a criminal conviction is set aside without regard for whether the defendant was fairly and justly convicted." (P. 1009.)

In the instant case, it is equally clear that the federal district court order did not impose upon the California superior court any duty to conduct an evidentiary hearing and that the order likewise could not limit the scope of any hearing to be held by that court. The federal court order meant only that unless the state did provide an evidentiary hearing on the issue of voluntariness, the federal court would release defendant from custody. The state chose to obtain an evidentiary hearing for the defendant on the issue of voluntariness. The superior court then resolved that issue in a manner unfavorable to defendant and also went on to determine the additional issues of prejudice and bypass of state remedies. The superior court had every right to do so.

■ Since the United States Supreme Court handed down its decision in *Fay* v. *Noia* (1963) 372 U.S. 391 [9 L.Ed.2d 837, 83 S.Ct. 822], there is no doubt that a federal district judge has the power to order the release of a state prisoner whenever that judge thinks the state procedure has violated the prisoner's federal constitutional rights. (*People* v. *Fasanella, supra*, at p. 1009.)

Experience with this expanded use of the writ of habeas corpus has shown that it has created a problem of considerable dimension in our judicial system, viz., the lack of finality to criminal cases originating in state courts. It is conceivable that an appeal can now be perpetuated beyond the appellant's lifetime. The late Justice John Harlan predicted such a dire result when, in his dissent to the majority opinion in *Fay* v. *Noia, supra,* he observed: "This decision, both in its abrupt break with the past and in its consequences for the future, is one of the most disquieting that the Court has rendered in a long time." (P. 448 [9 L.Ed.2d p. 874].) In an article appearing in the American Bar Association Journal, the author, in commenting upon the dilemma, pointed out that conviction in the state courts now has become merely the starting point of interminable litigation. "State appeals," he notes, "are followed by successive petitions for federal habeas corpus and successive federal appeals. What is involved is a repetitious, indefinite, costly process of judicial screening, rescreening, sifting, resifting, examining and re-examining of state criminal judgments for possible constitutional error." (See Doub, *The Case Against Modern Federal Habeas Corpus* (1971) 57 A.B.A.J. 323, 326.)

The instant case presents a dramatic example of the problem. Defendant has perpetuated his appeal for over 15 years and there is little indication that it is anywhere near completion. The matter has been

through the state trial court twice, reviewed on more than one occasion by the highest court in this state (a court which enjoys a national reputation as a champion for the cause of individual rights), and thereafter reviewed, to some extent at least, by the highest court in our nation. Since then, the case has been again reviewed by a federal district court, a federal appellate court, a state superior court and by this intermediate state Court of Appeal.

One cannot fault a defendant and his attorney for utilizing every legal means available to achieve the defendant's freedom. However, we can, and do, express our concern about a methodology which is self-defeating in the accomplishment of its purpose. Constant rescrutiny of the same or related issues in the process of multiple review inevitably leads to judicial preoccupation with procedural (and often highly technical) irregularities—thus, the exaltation of form over substance. There is a point beyond which even justice becomes unjust. (Sophocles, *Electra.*) It appears that we may well have arrived there when, as in this instance, because of our dual system, no single court is able to terminate repeated judicial review. The light at the end of the tunnel must indeed be dim for one who is encouraged by his captors to play the endless petition game. Certainly, this is a case in point.

The order is affirmed.

Taylor, P. J., and Kane, J., concurred.