989 F.2d 508
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Jimmie Dean STOHLER, Petitioner-Appellant,
v.
Steve HARGETT, Warden; Susan B. Loving, Attorney General,
Respondents-Appellees.
 No. 92-5040.
 United States Court of Appeals, Tenth Circuit.
 March 18, 1993.
 
 Before TACHA and BALDOCK, Circuit Judges, and BROWN,* Senior District Judge.**
 BALDOCK, Circuit Judge.
 
 
 1
 Petitioner Jimmie Dean Stohler appeals from an order denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. We affirm.
 
 
 2
 On January 21, 1982, Michelle Rae Powers was shot with a crossbow bolt. She died several days later. Stohler left town in early March of 1982, after he became the focus of the investigation into Powers' death and learned that charges were going to be filed against him. Shortly after he left town, Stohler and his coworker, Jack Ensminger, were charged with the murder.
 
 
 3
 Stohler surrendered to the police in early September 1982. He gave a statement admitting to planning the murder, obtaining the weapon, and arranging for another person to do the killing. He also testified on behalf of the state in Ensminger's trial in September 1982. Ensminger was acquitted.
 
 
 4
 The state of Oklahoma impaneled a grand jury in early 1983. The grand jury returned an indictment against Stohler for conspiracy to commit murder. On May 4, 1983, Stohler was charged with conspiracy to commit murder. Robert Doss, who is Stohler's good friend and Powers' ex-boyfriend and the father of her child, was charged in the same document with conspiracy to commit murder and first degree murder.
 
 
 5
 Stohler pled nolo contendere to the conspiracy charge, then unsuccessfully attempted to preclude, on double jeopardy grounds, a trial on the murder charge based on his conviction on the conspiracy charge. See Stohler v. State ex rel. Lamm, 696 P.2d 1038 (Okla.Crim.App.1985). A jury found Stohler guilty of first degree murder. His appeal from his conviction, Stohler v. State, 751 P.2d 1087 (Okla.Crim.App.1988), motion for post-conviction relief, and appeal from the denial of the motion for post-conviction relief were unsuccessful as well. Doss was acquitted.
 
 
 6
 Stohler then commenced the present habeas corpus proceeding. The matter was referred to a magistrate judge pursuant to 28 U.S.C. § 636, who conducted an evidentiary hearing and recommended that the petition be granted. Following a de novo hearing, the district court denied the petition.
 
 
 7
 We first address whether we must dismiss Stohler's petition because he failed to exhaust his state remedies. A state prisoner bringing a § 2254 action must show he exhausted all claims in state court. Miranda v. Cooper, 967 F.2d 392, 398 (10th Cir.), cert. denied, 113 S.Ct. 347 (1992). A district court is required to dismiss a habeas petition that contains both exhausted and unexhausted claims. Rose v. Lundy, 455 U.S. 509, 510 (1982).
 
 
 8
 Respondents argued before the district court that Stohler failed to exhaust his claim that he was denied a fair trial by the trial court's refusal to allow him to show some of the state's witnesses committed perjury. Respondents conceded that Stohler had exhausted all of his other claims.
 
 
 9
 In its final order, the district court raised, apparently for the first time, the fact that Stohler had not exhausted his claims that his trial counsel, Tom Gann, had a conflict of interest based on Gann's affair with Stohler's ex-wife and simultaneous representation of Stohler and Robert Doss.[1] The district court nevertheless concluded that because a substantial amount of time and resources had been invested in the case both at the state and federal levels, it would be in the best interests of all concerned for the court to make a complete record of its findings and conclusions as to all issues presented.
 
 
 10
 Respondents contend for the first time on appeal that the petition should be dismissed because Stohler failed to exhaust the conflict of interest claims identified by the district court as unexhausted. In Granberry v. Greer, 481 U.S. 129, 133 (1987), the Court held that where the state has failed to raise nonexhaustion in the district court, "[t]he appellate court is not required to dismiss for nonexhaustion notwithstanding the State's failure to raise it, and the court is not obligated to regard the State's omission as an absolute waiver of the claim." Rather, the court must determine "whether the interests of comity and federalism will be better served by addressing the merits forthwith or by requiring a series of additional state and district court proceedings before reviewing the merits of the petitioner's claim." Id. at 134.
 
 
 11
 We conclude that dismissal is not required under Granberry. No unresolved factual issues or questions of state law remain. See id. at 134-35. The interests of comity and federalism would not be better served by requiring Stohler to exhaust his conflict of interest claims in state court at this time.
 
 
 12
 Turning to the merits of the first issue, Stohler argues that Gann had a conflict of interest because he became involved romantically with Stohler's then-wife, Kay, before Stohler's trial began. The district court found that the romance did not begin until after Gann's representation of Stohler ended, but even if it had begun during the appeal, Stohler failed to show any adverse effect. Because the district court's findings were based on testimony presented to that court, we must uphold them unless they are clearly erroneous. See Castleberry v. Alford, 666 F.2d 1338, 1342 n. 2 (10th Cir.1981). A finding of fact is not clearly erroneous unless it is "without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made." LeMaire ex rel. LeMaire v. United States, 826 F.2d 949, 953 (10th Cir.1987). Our review of the record does not convince us that the district court's findings are clearly erroneous.
 
 
 13
 Stohler next argues that, under the test enunciated in Grady v. Corbin, 495 U.S. 508 (1990), his double jeopardy rights were violated because he pled nolo contendere to conspiracy, and one of the overt acts in the conspiracy charge was relitigated in the murder trial. Grady held that "the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." Id. at 521. As the Court later explained, this language, taken out of context and read literally, would bar a conspiracy prosecution and a prosecution for the underlying substantive offense. United States v. Felix, 112 S.Ct. 1377, 1383-84 (1992). However, the Court declined to interpret Grady in such a manner because of the long-standing rule that a substantive crime and the conspiracy to commit that crime "are separate offenses for double jeopardy purposes." Id. at 1385. We therefore hold the district court properly rejected Stohler's double jeopardy claim.
 
 
 14
 Stohler next contends that the district court erred in finding that he did not have a plea agreement with the state that induced his confession. In support of his contention, Stohler points to certain findings of a grand jury indicating that a plea agreement had been made; statements made by Gann in a letter and motion indicating such an agreement had been made; and Gann's closing argument at Stohler's murder trial.
 
 
 15
 The district court found that the weight of the evidence overwhelmingly supported the conclusion there was no plea agreement. Stohler testified at the Ensminger trial and before the grand jury that no agreement had been reached with the district attorney's office. Tom Gann, Kay Stohler Gann, and District Attorney David Moss testified that no plea agreement had been reached. Ample evidence supports the district court's finding. We uphold it.
 
 
 16
 Stohler also argues the district court erred in finding that his confession was not coerced by promises of leniency. After an independent evaluation, the district court concurred with the Oklahoma Court of Criminal Appeals' conclusion that Stohler knowingly and intelligently waived his rights and understood the consequences of his waiver. Stohler, 751 P.2d at 1089-90.
 
 
 17
 The voluntariness of a confession depends on the totality of the circumstances. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973). Stohler had the burden of proving his confession was involuntary. Martin v. Wainwright, 770 F.2d 918, 925 (11th Cir.1985), modified on other grounds, 781 F.2d 185 (11th Cir.), cert. denied, 479 U.S. 909 (1986). We independently review whether a confession was voluntary. Miller v. Fenton, 474 U.S. 104, 115 (1985).
 
 
 18
 In United States v. Garot, 801 F.2d 1241, 1244-45 (10th Cir.1986), relying on Hunter v. Swenson, 372 F.Supp. 287, 298 (W.D.Mo.), aff'd, 504 F.2d 1104 (8th Cir.1974), cert. denied, 420 U.S. 980 (1975), we listed the following questions as relevant in addressing a claim that a confession was unconstitutionally coerced by a promise of lenience: 1) was an express or implied promise of leniency made; 2) if not, did the defendant reasonably believe such a promise had been made; 3) was the defendant's statement induced by either the promise or the defendant's reasonable belief that a promise had been made; and 4) was the inducing promise coercive? For guidance as to what constitutes coercion, we looked to United States v. Williams, 447 F.Supp. 631, 636 (D.Del.1978), which rejected an inflexible rule that condemns any incriminating statement obtained due to promises, and instead applied a totality of the circumstances test that considers whether: 1) the defendant was in custody at the time of his statement; 2) he was alone and unrepresented by counsel; 3) the promise was initiated by the state, or by the defendant or his agent; 4) the defendant was aware of his constitutional and other legal rights; 5) the incriminating statement was part of an abortive plea bargain; 6) the promises or inducements were fulfilled by the state; and 7) the defendant was subjected to protracted interrogation or there is evidence showing that coercion precluded his statement from being knowing and intelligent. Garot, 801 F.2d at 1245 (citing Williams, 447 F.Supp. at 636-37).
 
 
 19
 Stohler testified before the grand jury that no promises were made, but there was a possibility of leniency if he cooperated. District Attorney Moss testified before the district court that he did not make any recommendation as to a specific amount of years on a reduction or anything else, but took the position that Stohler would have to earn his consideration. He later agreed that he would have reduced the charges to conspiracy or solicitation for a term of years if Stohler had given testimony implicating Doss, which Stohler did not give.
 
 
 20
 If a promise was made, or Stohler reasonably believed a promise had been made, the totality of circumstances nonetheless support the conclusion that Stohler's statement was voluntary. While he was in custody when he made his statement, he was represented by counsel. Gann testified that he approached Moss about an agreement, but Moss was not interested initially. Stohler, a former police officer, was aware of his constitutional rights; in fact, he admitted he knew anything he said could and would be used against him. The statement was not part of an abortive plea bargain. Moss testified that the state agreed to reduce the charge to second degree murder and recommended twenty years to life. However, the judge refused to accept the agreement. The state also did not ask for the death penalty on the first degree murder charge. Finally, given Stohler's age, education, and experience in law enforcement, a five-hour interrogation was not so protracted as to make the statement involuntary. Stohler has not identified any other evidence in the record showing that coercion precluded the statement from being knowing and intelligent. We conclude the statement was voluntary.
 
 
 21
 Stohler next argues that the state trial court violated his right to present a defense by excluding extrinsic evidence that Doss and Powers had been involved in a custody dispute, and that Powers allegedly abused her and Doss's son. The constitutional right to present a defense requires that a defendant not be arbitrarily deprived of relevant, material evidence that is vital to the defense. United States v. Begay, 937 F.2d 515, 523 (10th Cir.1991). Stohler concedes the excluded evidence was not relevant to self-defense or a justification defense. Rather, he argues that the evidence was relevant to his motive and intent.
 
 
 22
 Stohler relied on Wadley v. State, 553 P.2d 520 (Okla.Crim.App.1976), at trial. Wadley held that "the conduct, attitude, and feelings of the accused and the deceased [victim] toward each other may be shown in a murder case to establish motive, malice or intent." Id. at 523. However, in Wadley, the defendant had admitted fighting with the victim but denied any intent to seriously injure her. Id. at 522. The evidence at issue, that he told others about beating her previously, would have been relevant to show whether he had the requisite motive and intent.
 
 
 23
 The issues at Stohler's trial were whether he unlawfully and with malice aforethought caused Powers' death. See Okla.Stat. tit. 21, § 701.7A. The excluded evidence of child abuse was intended not to show whether he had the requisite intent, but why he had that intent. However, Stohler's motive for planning the murder was not a legally recognized defense. See, e.g., Okla.Stat. tit. 21, §§ 731, 733. The evidence therefore did not tend to prove or disprove any issue in the case. See Okla.Stat. tit. 12, § 2401. Exclusion of the evidence did not violate Stohler's right to present a defense.
 
 
 24
 Stohler also contends that his right to present a defense was violated by the trial court's refusal to allow him to impeach Moss and Jerry Quinton, the chief investigator for the district attorney's office, to show that his confession was induced by promises and therefore was involuntary. The trial court refused to allow the use of grand jury testimony to impeach Moss because it was remote in time and misleading. We see no indication that Stohler requested impeachment of Quinton with the grand jury testimony. As the trial court could not have erred in denying a request that was never made, that issue is not before us.
 
 
 25
 Stohler elicited testimony from Moss that while no formal agreement had been reached, it was understood if Stohler came back and testified, Moss was obligating himself to give Stohler some consideration, and there was a "gentleman's agreement" to give Stohler leniency. Stohler has not identified any specific inconsistent statements made by Moss before the grand jury that add anything to the testimony elicited at trial. He has not established any denial of his right to present a defense.
 
 
 26
 Stohler next argues that Gann's representation of him was ineffective. To establish an ineffective assistance of counsel claim one must prove both that counsel's performance was deficient, and that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984).
 
 
 27
 Stohler argues Gann was ineffective because he simultaneously represented Stohler and Doss. Stohler must demonstrate that "an actual conflict of interest adversely affected his lawyer's performance." Cuyler v. Sullivan, 446 U.S. 335, 350 (1980). The district court found that Gann was no longer representing Doss when he began representing Stohler. However, Gann testified that he continued to represent Doss with respect to a child custody matter after he began his representation of Stohler.
 
 
 28
 Nevertheless, Stohler still must show that Gann's representation of Doss adversely affected Gann's representation of Stohler. He notes that Gann used some information he obtained from Doss as part of his defense tactic, and speculates that if Doss had testified at Stohler's trial, this could have caused Gann to compromise one client or the other. This does not establish that Gann's actual representation of Stohler was adversely affected. Stohler also maintains that the magistrate judge's finding that Gann enticed Stohler back to Tulsa to give a confession in which Doss was not implicated, resulting in Stohler's legal demise, was correct. However, he has not identified any evidentiary support for the finding. We conclude that Stohler failed to establish ineffective assistance of counsel based on Gann's representation of Doss.
 
 
 29
 Stohler next argues that Gunn was ineffective because he failed to insist on a mandatory post-examination competency hearing. There is no evidence that Stohler was incompetent. Thus, if Gann had requested the hearing, the outcome would have been no different. The district court properly rejected this claim.
 
 
 30
 Stohler contends Gann was ineffective because he told the jury he would prove that Powers' abuse of her child led to Stohler's involvement in the crime, and that Stohler's confession was involuntary, after the trial court ruled such evidence inadmissible. Stohler discussed the abuse in his videotape statement, which the jury heard. Further, Moss and Quinton testified concerning the circumstances surrounding Stohler's surrender and statement. Thus, it was not error for Gann to refer to these matters in his closing argument.
 
 
 31
 Stohler argues Gann was ineffective because he failed to present Kay Stohler Gann's alibi testimony that she and Stohler had dinner at Jamil's restaurant the night of the murder. He asserts that Gann should have known the state would attempt to prove an inference could be drawn that Stohler was at the scene of the murder because the district attorney made this argument in her opening statement.
 
 
 32
 Even if Kay Stohler Gann had testified that she and Stohler ate at Jamil's the night of Powers' murder, Stohler admitted at the Ensminger trial that there might have been enough time to finish eating at Jamil's and drive to Powers' apartment and shoot her. Additionally, the jury heard his confession to participating in the planning of the crime. The jury was instructed that all persons concerned in the commission of a crime are regarded as principals and are equally guilty thereof. See Okla.Stat. tit. 21, § 172. Stohler has not shown that Gann's failure to call Kay Stohler Gann prejudiced the defense.
 
 
 33
 Stohler's next claim of ineffective assistance appears to be that Gann based part of his defense on his claim that Stohler's acts amounted to the crime of solicitation, but Stohler had already been convicted of that crime. We fail to see how this strategy prejudiced Stohler's defense.
 
 
 34
 The next claim of error is that Gann's appellate brief and petition for rehearing before the Oklahoma Court of Criminal Appeals were inadequate because they did not cite to authority in support of some arguments and did not include portions of the grand jury transcript. Stohler made no showing in this appeal that he would have prevailed on any of these issues had Gann supplied the missing information.
 
 
 35
 Stohler notes Abels v. Kaiser, 913 F.2d 821, 823 (10th Cir.1990), held that "when courts have found counsel constitutionally inadequate, because [he] failed to properly perfect an appeal, they do not consider the merits of arguments that the defendant might have made on appeal." The attorney in Abels failed to perfect an appeal by failing to file any brief. Id. at 822. In contrast, Gann did not fail to properly perfect the appeal; he failed to provide authorities for some of his arguments on appeal. The Supreme Court held that the prejudice component of Strickland is inapplicable and prejudice presumed where there has been an actual or complete denial of the assistance of counsel on appeal; however, it distinguished a complete lack of representation from a situation where counsel failed "to argue an issue as effectively as he or she might." Penson v. Ohio, 488 U.S. 75, 88 (1988). We conclude that Stohler failed to establish ineffective assistance of counsel in his direct appeal.
 
 
 36
 Finally, Stohler argues that the cumulative effect of errors denied him a fair trial. Because we have found no errors, we reject this argument.
 
 
 37
 The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.
 
 
 38
 The mandate shall issue forthwith.
 
 
 
 *
 Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 **
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument
 
 
 ***
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Stohler also did not exhaust the claim that Gann was ineffective because he argued evidence to the jury that the trial court had ruled inadmissible. However, the state has not argued that the petition should be dismissed because this claim is unexhausted. We therefore do not address that issue