John Michael HOOKER, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–88–915.

Court of Criminal Appeals of Oklahoma.

Nov. 14, 1994.

Order Denying Rehearing and Directing Issuance of Mandate Jan. 23, 1995.

Robert Ravitz, Public Defender, Paul Faulk, Asst. Public Defender, Public Defender's Office, at trial, and Dora S. Roberts, Asst. Public Defender, Oklahoma County Public Defender's Office, on appeal, Oklahoma City, for appellant.

Robert Macy, Dist. Atty., Kevin Krahl, Asst. Dist. Atty., District Attorney's Office, at trial, and Robert H. Henry, Atty. Gen. of Oklahoma, and A. Diane Hammons, Asst. Atty. Gen., on appeal, Oklahoma City, for appellee.

## OPINION

CHAPEL, Judge:

John Michael Hooker was charged with two counts of First Degree Murder with Malice Aforethought in violation of 21 O.S.Supp.1982, § 701.7, in the District Court of Oklahoma County, Case No. CRF–88–1939. Count I charged Hooker with the murder of Sylvia Stokes, and Count II charged Hooker with the murder of Drucilla Morgan. The State filed two Bills of Particulars seeking the death penalty on each count.

A jury trial was held October 24–28, 1988, before the Honorable Leamon Freeman, District Judge. At the conclusion of the first stage of the trial, the jury returned a verdict of guilty of first degree murder on both counts. The case then proceeded to the capital sentencing phase of trial. During sentencing, the jury found the existence of four aggravating circumstances: (1) Hooker was previously convicted of a felony involving the use or threat of violence to the person; (2) Hooker knowingly created a great risk of death to more than one person; (3) the murder was especially heinous, atrocious or cruel; and (4) the existence of a probability that

Hooker would commit criminal acts of violence constituting a continuing threat to society. The jury then sentenced Hooker to death on both murder counts. From this Judgment and Sentence, Hooker has perfected this appeal.

### FACTS

Sylvia Stokes was John Hooker's common-law wife. Hooker and Stokes had a violent, turbulent relationship, which was marked by episodes in which Hooker physically attacked Stokes. Several witnesses testified about Hooker's attacks on Stokes and about threats Hooker had made against Stokes. The State also introduced a Victim's Protective Order ("VPO") that Stokes had secured against Hooker approximately seven months before her death. In the spring of 1988, Hooker, Stokes and their three children were living in the Providence Apartments in Oklahoma City. Drucilla Morgan, Stokes' mother, as well as other members of Stokes' family, also lived in this apartment complex. Witnesses characterized the apartment complex as one where many residents regularly used drugs, such as PCP, and where violence was not infrequent.

In late March 1988, Stokes and her children moved out of the apartment she shared with Hooker. Several witnesses testified that on Sunday, March 27, 1988, Stokes was at her mother's apartment drinking beer and talking with friends and family. While Stokes was at her mother's apartment, Hooker arrived and tried to persuade Stokes to return home with him, but she refused.

Several witnesses testified that later that Sunday afternoon, they observed Stokes and Morgan enter the Hooker–Stokes apartment. Witnesses also testified they saw Hooker enter the apartment. The witnesses' accounts of these events varied and the times at which these incidents occurred also varied. Some witnesses also testified they noticed Hooker leave the apartment wearing a light colored shirt, blue jeans, tennis shoes and carrying a jacket over his arm or shoulder. They saw blood on Hooker's clothing. Other witnesses also observed blood on Hooker's clothing when they saw Hooker that Sunday afternoon or evening.

Two women, who were in the apartment below the Hooker–Stokes apartment on Sunday afternoon, testified they heard loud noises, like furniture moving, in the Hooker–Stokes apartment. Although the witnesses did not hear any arguing or screaming, the loud noises were sufficiently troubling as to cause the women to pray. After five minutes the noises stopped. The women estimated the incident occurred between 4:00 and 5:00 p.m.

Cynthia Stokes, who was Stokes' sister and Morgan's daughter, testified she saw Hooker in the Hooker–Stokes apartment on Sunday evening watching "60 Minutes" on television. Cynthia stated neither her sister Sylvia nor her mother were in the apartment with Hooker.

On Monday morning, March 28, Cynthia Stokes grew concerned because she had not seen her mother or sister since Sunday afternoon. Cynthia went to the Hooker–Stokes apartment to see if she could find them. Cynthia was unable to enter the apartment because something was blocking the door. She then managed to push the door open slightly and look in the apartment. Cynthia saw her mother lying on the floor in a pool of blood. She immediately called the police.

The police found both Stokes and Morgan's bodies in the apartment. The women died from multiple stab wounds. A blood analysis of the women indicated both women were intoxicated at the time of death. The analysis further indicated the presence of PCP in Stokes' blood.

Officer Gilbert Riggs testified that Stokes' body was blocking the only door to the apartment. The police investigation revealed that Stokes and Morgan's murderer left the apartment through a back window. The police also uncovered a partial bloody footprint in the apartment that was consistent with tennis shoes worn by Hooker. Hooker's shoe is a common brand and the print could have matched other similar shoes.

Over a week after the bodies of Stokes and Morgan were found, Hooker was arrested. Blood found on his blue jeans was analyzed as type B. Hooker's blood type is O; Stokes and Morgan were blood type B. Twenty-two per cent of African–Americans have blood type B. Hooker, Stokes and Morgan are African–American.

### PRO SE PROPOSITION OF ERROR

On November 13, 1993, Hooker filed with this Court a pro se proposition of error contending he was denied effective assistance of counsel at his arraignment. Hooker contends that at his initial appearance, where he entered a plea of not guilty, counsel was not present. Although the arraignment minute for this initial appearance does indicate at one point that counsel was not present, the document also contains the following notation:

PD

 appears

DA

■ Even assuming counsel was not present at Hooker's initial appearance (which is not completely clear from the record) counsel subsequently represented Hooker at the preliminary hearing, at the arraignment held following the preliminary hearing, at all pre-trial motions hearings and at trial. Hooker did not object to the lack of counsel at the initial appearance nor was he in any way prejudiced by this alleged error.[1] Accord-

ingly, relief is not warranted under this proposition of error.

### JURY SELECTION ISSUES

In Propositions XVII and XXIII, Hooker urges that alleged errors in the jury selection process warrant overturning his convictions and sentences. We disagree.

In Proposition XVII, Hooker contends that the State's use of its peremptory challenges to excuse certain jurors who expressed some hesitation about their ability to impose the death penalty violated the Sixth, Eighth and Fourteenth Amendments. This proposition is without merit.

The trial court, at the request of the prosecutor, excused for cause two jurors who said they would be unable or unwilling to impose the death penalty. Hooker did not challenge or object to the prosecutor excusing these two potential jurors. The statements of these two prospective jurors made clear that they were unable to consider death as a penalty, and they were properly excused for cause.[2]

On appeal, Hooker does not appear to challenge the trial court's ruling excusing for cause the two prospective jurors discussed above;[3] rather, he focuses his complaint on two of the prosecutor's peremptory challenges. Hooker contends his right to a fair and impartial jury was violated when the prosecutor exercised his first peremptory challenge to excuse Arthur Clinton[4] and

---

1. *Sisson v. Page*, 279 F.Supp. 614, 617 (W.D.Okl. 1968).

2. Prospective Juror Vermillion and Prospective Juror Scothorn both stated that they would be unable to consider death as a punishment if they found the defendant guilty of first degree murder. *See Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985) (standard for determining whether juror may be excused for cause is whether his views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and oath"); *Adams v. Texas*, 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980) ("a juror may not be challenged for cause based on his views about capital punishment unless

those views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath"); *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

3. As stated above, removing prospective jurors Vermillion and Scothorn for cause was proper and would not be grounds for relief.

4. In his brief, Hooker objects to the prosecutor excusing "Clinton Smith" from the jury pool. "Clinton Smith" was not on Hooker's jury panel. Most likely Hooker is referring to juror Arthur Clinton, a juror who the prosecutor did remove from the jury panel.

again when the prosecutor used his third peremptory challenge to remove Juror Barbara Williams. Both Clinton [5] and Williams [6] expressed some reservations or hesitation about imposing the death penalty, but ultimately indicated that they would consider death as a punishment. At trial, Hooker did not object to the prosecutor's use of his peremptory challenges to excuse these two potential jurors. Accordingly, this Court will review only for plain error.

■ Essentially, Hooker argues the principles and limitations set forth in *Batson v. Kentucky* [7] also apply to peremptory challenges of jurors expressing reservations about the death penalty but who, nonetheless, are not removed for cause from the jury. Hooker does not suggest that in his case the prosecutor used his peremptory challenges for improper, racially-motivated reasons, or that use of the prosecutor's peremptory challenges had any kind of effect on the racial make-up of the jury, or that the prosecutor's peremptory challenge had any other improper purpose or effect. Rather, Hooker simply argues that it was improper to strike jurors who express reservations about the death penalty. There is a dramatic difference between striking a juror for racially-motivated reasons and striking a juror because he expresses some personal reservations about his ability to impose certain types of punishment. We are not persuaded the principles of *Batson* should be extended to jurors who express reservations about the death penalty, and we conclude the prosecutor's use of his peremptory challenges did not constitute plain error.

In Proposition XXIII, Hooker complains that the jury selection process set forth in 38 O.S.Supp.1987, §§ 18, 28(A), violated his right to a jury pool drawn from a fair cross-section of the community. Specifically, Hooker claims section 28(A), which provides that persons over the age of seventy shall not be compelled to serve as jurors, is constitutionally defective. Hooker also complains that 38 O.S.Supp.1987, § 18, which draws the jury pool from persons over the age of eighteen who are licensed to drive, is constitutionally infirm because it excludes blind and handicapped persons, as well as other groups of persons who might not be licensed to drive.

■ This Court, in a number of other cases, has carefully considered and rejected the claim that section 28(A) violates the fair cross-section requirement. [8] We likewise reject Hooker's claim that section 28(A) violates the fair cross-section requirement.

■ As to the claim that 38 O.S.Supp. § 18 is constitutionally infirm, we also have considered similar claims in other cases and rejected such constitutional attacks on section 18. [9] Further, Hooker has failed to present any evidence to show that Oklahoma's jury selection process excludes any distinctive group in the community. To establish a prima facie case of a violation of the fair cross-section requirement, Hooker " 'must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not

---

**5.** Juror Clinton stated he did not know how he felt about the death penalty and indicated concern about whether the death penalty would actually be carried out. However, Clinton did state that he could consider imposing the death penalty.

**6.** Juror Williams initially stated she would ''be surprised'' if she would impose the death penalty, but did advise she would consider the death penalty as one of the three possible penalties that could be imposed for first degree murder.

**7.** 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (prohibiting race-based peremptory challenges).

**8.** *Brown v. State*, 871 P.2d 56, 63 (Okl.Cr.1994); *Trice v. State*, 853 P.2d 203, 207 (Okl.Cr.), cert. denied, —— U.S. ——, 114 S.Ct. 638, 126 L.Ed.2d 597 (1993); *Ellis v. State*, 867 P.2d 1289, 1294 (Okl.Cr.1992), reh. denied, (Okl.Cr.1994); *Sellers v. State*, 809 P.2d 676 (Okl.Cr.), cert. denied, 502 U.S. 912, 112 S.Ct. 310, 116 L.Ed.2d 252 (1991); *Fox v. State*, 779 P.2d 562 (Okl.Cr.1989), cert. denied, 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990).

**9.** *Trice*, 853 P.2d at 207; *Fox*, 779 P.2d at 566.

fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process.'"[10] Hooker does not even attempt to make this showing. Rather he relies solely on unsupported allegations of bias raised for the first time on appeal. This proposition of error is without merit.

### ISSUES RELATING TO GUILT AND INNOCENCE

In Proposition I, Hooker contends the trial court erred by allowing the State to introduce (1) testimony that in 1986 Hooker waited for Stokes in their apartment and then attacked her with a pool cue; and (2) a redacted version of a Victim's Protective Order ("VPO") which Stokes obtained against Hooker in October 1987. The version of the VPO given to the jury included the following statements written by Stokes: "please help me ... I don't want to be like the others dead," and "Feel he will harm me." (State's Exs. 45a and 45b) Hooker complains admission of this evidence warrants reversal of his convictions. We disagree.

Before trial, the State filed a *Burks*[11] notice advising defense counsel that it was seeking to introduce evidence of the 1986 pool cue incident, as well as other incidents.

At a pretrial hearing and at trial, the State justified admission of the pool cue incident under the following exceptions to the other crimes evidentiary bar: (1) common scheme or plan, or (2) motive or intent. The evidence was admitted as probative of motive or intent.

Although the evidence was admitted as probative of motive or intent exception, Hooker focuses his attack of this evidence on grounds that it does not fall under the common scheme or plan exception.[12] Hooker is correct that the pool cue incident is not sufficiently distinctive nor connected to the stabbing deaths of Stokes and Morgan as to constitute a common scheme or plan. However, the evidence was admitted to prove motive and/or intent, and for this purpose the admission of the evidence was proper.

■ Evidence of previous altercations between spouses is relevant to the issue of intent.[13] Evidence of Hooker's prior attack on his wife was relevant to show motive and intent, and the probative value of this evidence outweighed its prejudicial effect. Admission of this evidence was proper.

As to the admission of the VPO, Hooker's counsel conceded at a pretrial hearing that the issuance of the VPO itself was admissible but objected to the inclusion of written statements by Stokes that were included in the

**10.** *Sellers,* 809 P.2d at 687, *quoting, Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979). *See Trice,* 853 P.2d at 207.

**11.** *Burks v. State,* 594 P.2d 771 (Okl.Cr.1979).

**12.** *See Driver v. State,* 634 P.2d 760, 762 (Okl.Cr. 1981) (other crimes evidence admissible under common scheme or plan exception where crimes are highly distinctive, almost like a signature, or where one crime depends upon and facilitates another); *Atnip v. State,* 564 P.2d 660, 663 (Okl. Cr.1977).

**13.** *See Duvall v. State,* 825 P.2d 621, 626 (Okl.Cr. 1991), *cert. denied,* — U.S. —, 113 S.Ct. 224, 121 L.Ed.2d 161 (1992) (evidence of ill feeling, threats, or similar conduct by one spouse toward another in a marital homicide case is admissible and relevant); *Holt v. State,* 774 P.2d 476, 478 (Okl.Cr.1989) (victim protective order admissible to show motive); *Lamb v. State,* 767 P.2d 887,

890 (Okl.Cr.1988) (evidence about prior incidents where husband attacked wife was properly admitted in marital homicide case); *Brown v. State,* 753 P.2d 908, 911 (Okl.Cr.1988) (testimony by wife/decedent's two children concerning husband/appellant's pointing gun at wife was probative of appellant's motive and/or intent); *Villanueva v. State,* 695 P.2d 858 (Okl.Cr.1985) (evidence of prior altercation between husband and wife was relevant to issue of malice); *Manning v. State,* 630 P.2d 327, 330 (Okl.Cr.1981) ("[i]n marital homicide cases, a statement showing ill-feelings, threats or similar conduct by one spouse towards the other is relevant to show motive or malice"); *Wadley v. State,* 553 P.2d 520, 523 (Okl.Cr.1976) (in marital homicide cases evidence relating to "ill-feeling, ill-treatment, jealousy, prior assaults, personal violence, threats, or any similar conduct or attitude by the husband toward the wife" is admissible to show motive and malice).

body of the VPO. The trial court required the State to delete some of Stokes' statements from the document, but allowed the following two statements to remain: "please help me ... I don't want to be like the others dead," and "Feel he will harm me." (State's Exs. 45a and 45b) At trial, defense counsel stipulated that exhibits 45A and 45B were redacted copies of an original VPO signed by Sylvia Stokes. Counsel objected to the exhibits on the grounds of relevance and hearsay.[14]

In *Moore v. State,* [15] this Court held hearsay statements of a victim's state of mind are admissible under 12 O.S.1981, § 2803(3), which is the state of mind exception to the hearsay rule. This evidence is recognized as relevant in cases where one spouse kills the other spouse.[16] However, "while the deceased's antecedent declarations are admissible to show his or her state of mind, declarations by the deceased referring to the defendant's past acts are inadmissible." [17]

 The VPO and Stokes' statement, "Feel he will harm me" and "please help me," were admissible under the state of mind exception to the hearsay rule and the decisions of this Court. Such statements constitute a declaration of Stokes' state of mind and, accordingly, were admissible. However, the statement, "I don't want to be like the others dead," is a different matter. Although this statement does reveal Stokes' state of mind, the reference to "the others" implies Hooker committed past acts of violence in which he killed other people. It was

error to allow the jury to hear this reference to "the others." However, because we find beyond a reasonable doubt that this error did not contribute to the verdict,[18] this error is harmless and relief is not warranted.[19]

Finally, under Proposition I, Hooker asserts that the trial court erred by providing the jury with Instruction 12. Instruction 12 is identical to, and apparently based on, Hooker's requested Instruction 27. (O.R. 331) This instruction properly limited the jury's consideration of this evidence to the issue of motive and is not grounds for relief.

 In his second proposition of error, Hooker claims the trial court erred in admitting a floor tile bearing a bloody shoeprint because the evidence was more prejudicial than probative and was repetitive. This floor tile was taken from the Hooker–Stokes apartment and was used as evidence linking Hooker to the murder scene. The admission of the bloody tiles is analogous to cases in which bloody clothing has been admitted into evidence. This Court has found that admission of such clothing is proper if it serves to prove a point or to connect the defendant to the crime.[20] Here, the evidence of the bloody tile was used to connect Hooker to the crime scene. The trial court did not abuse its discretion in admitting this evidence.

 In Proposition III, Hooker contends that the trial court erred in refusing to instruct the jury on the lesser-included, noncapital offenses of Second Degree Murder

---

**14.** In his reply brief, Hooker cites *State v. Alexander,* 303 S.C. 408, 401 S.E.2d 167 (1991), to argue that the VPO should not have been admitted. *Alexander* concerns a South Carolina rule that affidavits are inadmissible at trial and is not applicable to Hooker's case.

**15.** 761 P.2d 866 (Okl.Cr.1988).

**16.** *See also Duvall v. State,* 825 P.2d at 626; *Lamb v. State,* 767 P.2d at 890; *Brown v. State,* 753 P.2d at 911; *Villanueva v. State, supra; Manning v. State,* 630 P.2d at 330; *Wadley v. State,* 553 P.2d at 523.

**17.** *Moore v. State,* 761 P.2d at 870. *See Wadley v. State,* 553 P.2d 520, 524–525 (Okl.Cr.1976).

**18.** *See Moore,* 761 P.2d at 870; *Wadley,* 553 P.2d at 524–25.

**19.** Hooker also asserts that this evidence was improperly used in the second stage of trial. However, due to the overwhelming evidence supporting Hooker's two death sentences, we find any error in admitting this evidence was harmless as to the imposition of the death penalty.

**20.** *Klinekole v. State,* 705 P.2d 179 (Okl.Cr.1985).

and Manslaughter, and the trial court erred in failing to give Hooker's requested self-defense and voluntary intoxication instructions. A trial court must instruct the jury on lesser-included offenses when the lesser-included offense or the defendant's theory of the case is supported by any evidence in the record.[21] However, where the evidence does not reasonably support a conviction on the lesser included offense, or where the evidence provides no support for the defendant's theory of the case, then the instructions should not be provided.[22]

 Here, Hooker's defense was that the State failed to prove that he was the person who killed Stokes and Morgan. Instructions on self-defense and voluntary intoxication were not warranted since Hooker's defense was not that he acted in self-defense or was so intoxicated as to be able to form the requisite intent but rather that he did not commit the crimes at all, or at least that the State failed to prove beyond a reasonable doubt that he was the murderer. In addition, there was no evidence to indicate that either Stokes or Morgan acted as the aggressor. The fact that Morgan had killed someone in the past or that Stokes had ingested PCP, in and of itself, is not sufficient to warrant a self-defense instruction.[23] Further, most of the evidence on intoxication was presented during second stage, and the evidence of intoxication during the first stage of trial was not sufficient to warrant an instruction on voluntary intoxication.

 As to the two lesser-included offenses, Hooker's defense was that he committed no crime whatsoever, not that he committed a lesser offense. Where the defendant claims he is innocent of any crime, he is not entitled to lesser-included offense instructions.[24] The trial court ruled correctly when it decided not to give the lesser-included offense instructions.[25]

In his fourth proposition of error, Hooker contends that the trial court erred in instructing the jury that the State depended "in part" on direct and circumstantial evidence in its case against Hooker, as, according to Hooker, the case was wholly circumstantial. Hooker claims he was prejudiced by use of the phrase "in part." This argument is without merit.[26] Reading the instructions as a whole, the instruction did not prejudice Hooker. The instructions fairly set forth the State's burden of proof and relief is not warranted.

 In Proposition V, Hooker contends the evidence was insufficient to prove malice aforethought. This contention is without merit. Prior to the deaths of Stokes and Morgan, Hooker stated that he wanted to kill them. Hooker also had a long history of

---

**21.** *See Hunter v. State,* 829 P.2d 64 (Okl.Cr.1992); *Stanley v. State,* 762 P.2d 946, 949 (Okl.Cr.1988); *Broaddrick v. State,* 706 P.2d 534 (Okl.Cr.1985).

**22.** *See Ellis v. State,* 867 P.2d at 1297; *Duvall v. State,* 825 P.2d at 627; *Hale v. State,* 750 P.2d 130 (Okl.Cr.), *cert. denied,* 488 U.S. 878, 109 S.Ct. 195, 102 L.Ed.2d 164 (1988); *Mann v. State,* 749 P.2d 1151 (Okl.Cr.), *cert. denied,* 488 U.S. 877, 109 S.Ct. 193, 102 L.Ed.2d 163 (1988); *Bennett v. State,* 743 P.2d 1096 (Okl.Cr.1987).

**23.** *Broaddrick,* 706 P.2d 534 (Okl.Cr.1985).

**24.** *Smith v. State,* 727 P.2d 1366, 1371 (Okl.Cr. 1986), *cert. denied,* 483 U.S. 1033, 107 S.Ct. 3277, 97 L.Ed.2d 780, *reh. denied,* 483 U.S. 1044, 108 S.Ct. 17, 97 L.Ed.2d 806 (1987).

**25.** On appeal, Hooker relies on *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). This reliance is misplaced. In *Beck,* the

Court reversed the defendant's conviction and death sentence because Alabama law forbid the trial court from providing the jury with a lesser-included offense instruction even though the evidence warranted the instruction. Further, the Alabama death penalty statute required the jury to sentence the defendant to death upon finding the defendant guilty of the capital offense. This sentence was advisory and the trial judge, after weighing the aggravating and mitigating evidence, would then render the sentence. In Hooker's case, the evidence did not warrant a lesser-included instruction and the jury possessed discretion to impose a sentence less than death. *Beck* does not compel the trial court to provide lesser-included offense instructions under these circumstances.

**26.** *Underwood v. State,* 659 P.2d 948, 953 (Okl. Cr.1983).

violence and threats against Stokes. This evidence, along with the evidence and testimony linking Hooker to the crime scene, was sufficient to show malice aforethought. When the evidence, and the inferences to be drawn therefrom, are viewed in the light most favorable to the State, the evidence tends to exclude every reasonable hypothesis other than Hooker's guilt.[27] Further, we are not persuaded by Hooker's contention that the evidence showing that he was intoxicated the day of the murders precluded a finding that he formed the requisite intent for first degree murder. The evidence of intoxication was inconsistent, and most of the evidence showing Hooker's drug and alcohol abuse was presented during the sentencing phase of trial and not during the guilt and innocence stage of the trial. The evidence is sufficient to sustain Hooker's convictions for murder in the first degree of Stokes and Morgan.

### ISSUES RELATING TO PUNISHMENT

In his sixth proposition of error Hooker challenges the use of two 1971 convictions to support the aggravating circumstances of (1) prior conviction of a felony involving use or threat of violence, and (2) continuing threat to society. Hooker contends the trial court erred in refusing to strike the two 1971 convictions on the grounds that the convictions were obtained under a juvenile system which has subsequently been found to be unconstitutional.[28]

Prior to 1972, males and females between the ages of sixteen and eighteen were treated differently under the Oklahoma juvenile criminal justice system. Males were pre-

sumed to be adults at the age of sixteen and were subject to the jurisdiction of the district court for any criminal acts they may have committed. Females, on the other hand, were treated as juveniles until the age of eighteen. A female was subject to the jurisdiction of the district court only if the juvenile court certified the young woman to stand trial as an adult. This system violated the Equal Protection Clause of the Fourteenth Amendment, and males who were convicted of offenses under this system are entitled to a hearing to determine whether the court would have certified them to stand trial as an adult.[29]

■■■ Hooker was seventeen-and-a-half years old at the time of the commission of the two 1971 offenses. He was treated as an adult without the benefit of a certification hearing. After the preliminary hearing in the 1971 cases, Hooker pleaded guilty to Manslaughter in the First Degree and Assault and Battery with a Deadly Weapon with Intent to Kill. Although Hooker subsequently sought post-conviction review of his 1971 convictions, there is no record that a post-conviction hearing on the issue of certification was held. In his brief, Hooker requested that this Court render the 1971 convictions void or, alternatively, hold the case in abeyance while a proper post-conviction hearing was held. Because there was no record that a proper hearing on the issue of certification was held, this Court remanded the case to the district court for a hearing to determine whether Hooker would have been certified to stand trial as an adult in the two 1971 cases.

---

**27.** *Romano v. State*, 847 P.2d 368, 378 (Okl.Cr. 1993), *aff'd*, ── U.S. ──, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994); *Billey v. State*, 800 P.2d 741, 743 (Okl.Cr.1990); *Smith v. State*, 695 P.2d 1360, 1362 (Okl.Cr.1985).

**28.** At trial, Hooker stipulated he had previously been convicted of two prior violent felonies. However, counsel objected to the use of the prior felonies in aggravation because "Mr. Hooker was a juvenile when he committed this crime and was never certified as an adult pursuant to the

requirements of Lamb versus Brown of the 10th Circuit." (T. Vol. V at 52) The trial court overruled the objection. Thus, the issue is preserved for appeal.

**29.** *Radcliff v. Anderson*, 509 F.2d 1093 (10th Cir.1974), *cert. denied*, 421 U.S. 939, 95 S.Ct. 1667, 44 L.Ed.2d 95 (1975); *Lamb v. Brown*, 456 F.2d 18 (10th Cir.1972); *Edwards v. State*, 591 P.2d 313 (Okl.Cr.1979).

A hearing was held before the district court April 27, 1994.[30] In support of its position that Hooker would have been certified to stand trial as an adult in 1971, the State relied upon the record and preliminary hearing transcript from the 1971 cases.[31] Hooker called a witness to support his claim that he acted in self-defense and that the killing was accidental.[32] At the conclusion of the hearing, the trial court made extensive and complete findings of fact and conclusions of law. The court concluded that Hooker would have been certified to stand trial as an adult.

The record supports the trial court's conclusions that Hooker would be certified to stand trial as an adult.[33] The preliminary hearing transcript and other records reveal Hooker was seventeen years and four months old when he committed the crimes of manslaughter and assault and battery with a deadly weapon. On the evening of February 13, 1971, Hooker attended a party armed with a gun. He had a confrontation with the party's hostess and then shot the gun twice, wounding the woman and killing a friend of his. Although Hooker advanced the theory that the woman threatened him with a knife and he acted in self-defense, that theory is subject to dispute and does not preclude his certification to stand trial as an adult. Accordingly, we find that use of the 1971 convictions to support the aggravating circumstances of previous conviction of a felony involving use or threat of violence and continuing threat to society was proper.

In his seventh proposition of error, Hooker complains his stipulations to two of the four aggravating circumstances were improper because he did not personally stipulate to the aggravating circumstances and the trial court did not question him about the stipulations as required by *Brewer v. State*.[34] This claim of error stems from a hearing held on October 21, 1988 at which defense counsel stipulated to the existence of two prior violent felony convictions that would be used to support the aggravating circumstance of prior conviction

---

**30.** Although Hooker has repeatedly sought an evidentiary hearing on this issue in both state and federal court and specifically requested a hearing in his brief before this Court, at the hearing and in a supplemental brief filed with this Court on June 14, 1994, Hooker now claims that the certification hearing could not be held retrospectively. We find this argument to be without merit. *See generally Kelley v. Kaiser,* 992 F.2d 1509 (10th Cir.1993) (court ordered an evidentiary hearing to determine whether defendant would have been certified as adult in 1965 case); *Bromley v. Crisp,* 561 F.2d 1351, 1362–1363 (10th Cir.1977), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 499 (1978) (case of co-petitioner Killion remanded for evidentiary hearing on certification issue in 1959 conviction). Further, "[t]he court can take into account all doubts that arise, and any weakness of proof, because of the passage of time as factors against the state. This will afford substantial protection to the petitioners from the fact that the determinations will concern circumstances in earlier years." *Bromley v. Crisp,* 561 F.2d at 1357 n. 6.

**31.** In his supplemental brief, Hooker objects to the State's reliance on the 1971 preliminary hearing transcript and the records in these cases to support the finding that Hooker would have been certified to stand trial as an adult in 1971. At the 1971 preliminary hearing, Hooker was present, he was represented by counsel and he had the opportunity to cross-examine the State's witnesses. The 1971 preliminary hearing transcript was used at the certification hearing to show that the 1971 cases had prosecutive merit and to show the circumstances surrounding the crimes. The court below did not err in relying on these documents in this hearing.

**32.** Hooker also called a witness to testify about the present difficulty he experienced in trying to investigate the 1971 cases and his inability to find witnesses, such as Claudia Boyce who testified at the 1971 preliminary hearing. As we stated earlier, we reject Hooker's contention that the hearing could not be held retrospectively. *See Bromley, supra.*

**33.** *See Kelley v. Kaiser,* 992 F.2d at 1513 n. 5; *Sherfield v. State,* 511 P.2d 598, 603 (Okl.Cr. 1973).

Hooker appears to allege in his supplemental brief that the trial court somehow shifted the burden of proof to him. There is no support for this allegation.

**34.** 650 P.2d 54 (Okl.Cr.1982), *cert. denied,* 459 U.S. 1150, 103 S.Ct. 794, 74 L.Ed.2d 999 (1983) (in capital case where aggravating circumstance of prior conviction of felony involving use or threat of violence to person, defendant must be given opportunity to personally stipulate to prior felony conviction and counsel may not stipulate for defendant).

of felony involving use or threat of violence. Entering this stipulation assures that the jury will not hear evidence of the crime itself. Hooker was present at this pretrial hearing, but the trial court did not interrogate Hooker nor did Hooker personally stipulate to the prior convictions. During trial, there was a brief bench conference in which counsel addressed defense counsel's desire to allow Hooker to also stipulate to the continuing threat aggravating circumstance. The purpose of this stipulation was again to assure that the jury would not hear evidence of the circumstances underlying Hooker's prior felony convictions. Hooker was not at the bench but he was present in the courtroom during this discussion. Shortly thereafter, the judge continued the discussion in chambers with counsel. Hooker was not present during this discussion, and Hooker's counsel specifically waived the presence of his client. At this conference, the prosecutor and defense counsel agreed to a stipulation on the continuing threat aggravating circumstance. As a result of these stipulations, neither the State, nor the defendant, offered any evidence about the facts underlying the prior felony offenses. Hooker was present when the trial court apprised the jury of the two stipulations.

■ Neither defense counsel, nor the prosecutor, nor the trial court complied with the technical requirements of *Brewer*. However, during discussions regarding the stipulations, defense counsel specifically referred to *Brewer*. Hooker neither alleges ineffective assistance of counsel nor claims that he would not have entered the stipulations. It is apparent from the record that the decision to enter the stipulations was part of a calculated strategy designed to alleviate the po-

tential harm that might occur if the State were allowed to put on its proof regarding the two prior violent felony convictions. This Court faced a similar situation in *Pickens v. State*.[35] In *Pickens*, we found that even though defense counsel rather than the defendant entered a stipulation regarding the prior felony convictions, the principles of *Brewer* were not violated. The basic purpose of *Brewer* was to allow a defendant to enter a stipulation so that the jury would not hear the underlying facts of the prior felony convictions. Hooker received that benefit and was not prejudiced by the fact that he did not personally enter the stipulations. No relief is warranted under this assignment of error.

■ In Proposition VIII, Hooker challenges the constitutionality of the aggravating circumstance of great risk of death to more than one person. This Court has reviewed this aggravating circumstance in other cases and found it to be constitutionally valid.[36] Moreover, this Court has found that killing more than one person is sufficient to support this aggravating circumstance.[37] Hooker killed his common-law wife and his mother-in-law. The evidence is sufficient to support the aggravating circumstance of great risk of death to more than one person.

■ In his ninth proposition of error, Hooker contends that the jury instruction on the heinous, atrocious or cruel aggravating circumstance did not adequately narrow the class of persons subject to the death penalty even though the instruction contained the narrowing language, "The phrase 'especially heinous, atrocious, or cruel' is directed to those crimes where the death of the victim was preceded by torture of the victim or

---

**35.** 850 P.2d 328, 337 (Okl.Cr.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 942, 127 L.Ed.2d 232 (1994).

**36.** *Trice*, 853 P.2d at 220; *Smith*, 727 P.2d at 1373.

**37.** *Sellers*, 809 P.2d at 691 (killing of both parents supported this aggravating circumstance); *Fowler v. State*, 779 P.2d 580, 588 (Okl.Cr.1989),

*cert. denied*, 494 U.S. 1060, 110 S.Ct. 1537, 108 L.Ed.2d 775 (1990) (killing three people sufficient to this aggravating circumstance); *Stout v. State*, 693 P.2d 617, 628 (Okl.Cr.1984), *cert. denied*, 472 U.S. 1022, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985) ("evidence was sufficient to show that the appellant knowingly created a great risk of death to more than one person as appellant killed two people").

serious physical abuse." The requirement that the death of the victim be preceded by torture of the victim or serious physical abuse narrowly tailors this aggravating circumstance so that it is applied in a constitutional manner.[38] In Hooker's case, the evidence supports a finding that the deaths of Morgan and Stokes were preceded by torture or physical abuse. Both women were stabbed a number of times; both women lived for one to ten minutes before dying; Stokes sustained defensive wounds; and there was evidence that a physical struggle had occurred in the apartment.[39] The evidence shows conscious physical suffering sufficient to support this aggravating circumstance.

In Proposition X, Hooker challenges the constitutionality of Oklahoma's continuing threat aggravating circumstance under both the state and federal constitutions claiming the aggravating circumstance is vague and overbroad. This Court has previously rejected such challenges to this aggravating circumstance and we are not persuaded to change our position.[40] Further, Hooker argues that the term "society" as used in the continuing threat aggravating circumstance should be restricted to "prison society." This Court rejected this argument in *Berget*,[41] and we continue to so hold.

In addition, Hooker contends, the evidence was insufficient to support the continuing threat aggravating circumstance, and the trial court erred in allowing unadjudicated offenses to be used to support this aggravating circumstance. Contrary to Hooker's claims the evidence was sufficient to support this aggravating circumstance. Hooker stipulated to the continuing threat aggravating circumstance and his prior convictions for manslaughter and assault and battery are sufficient to support this aggravating circumstance.[42] The unadjudicated prior offenses to which Hooker is referring are past acts of violence that Hooker allegedly inflicted upon his wife, and under this Court's decisions such evidence is admissible.[43] This proposition of error is without merit.

In his eleventh proposition of error, Hooker complains the prosecutor erroneously argued Hooker's lack of remorse as a nonstatutory aggravating circumstance. Hooker asserts that the prosecutor, in second stage closing argument, improperly argued that Hooker lacked remorse. At the outset, we must note there was no contemporaneous objection to the prosecutor's comment and thus this Court will review for plain error only. The prosecutor's comment was made in response to Hooker's mitigating evidence that he was remorseful. Commenting on evidence raised by the defendant on

**38.** *Hooks v. State*, 862 P.2d 1273, 1282 (Okl.Cr. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1870, 128 L.Ed.2d 490 (1994); *Romano v. State*, 847 P.2d at 387; *Hayes v. State*, 845 P.2d 890, 892 (Okl.Cr.1992); *Berget v. State*, 824 P.2d 364, 373 (Okl.Cr.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 124, 121 L.Ed.2d 79 (1992); *Stouffer v. State,* 742 P.2d 562, 563 (Okl.Cr.1987) (opinion on rehearing), *cert. denied,* 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988); *see also Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990).

**39.** *Battenfield v. State,* 816 P.2d 555, 565 (Okl.Cr. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1491, 117 L.Ed.2d 632 (1992) (must show evidence of conscious physical suffering of victim prior to death to meet required torture or serious physical abuse standard). *See also Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990).

**40.** *Malone v. State,* 876 P.2d 707, 716 (Okl.Cr. 1994); *Snow v. State,* 876 P.2d 291, 298 (Okl.Cr.

1994); *Revilla v. State,* 877 P.2d 1143, 1156 (Okl.Cr.1994); *Allen v. State,* 871 P.2d 79, 101 (Okl.Cr.1994); *Ellis,* 867 P.2d at 1301; *Trice,* 853 P.2d at 220–221; *Boltz v. State,* 806 P.2d 1117, 1125 (Okl.Cr.), *cert. denied,* 502 U.S. 846, 112 S.Ct. 143, 116 L.Ed.2d 109 (1991).

**41.** 824 P.2d at 374.

**42.** *See Malone, supra; Hooks,* 862 P.2d at 1282–1283; *Trice, supra; Smith v. State,* 819 P.2d 270, 277 (Okl.Cr.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2312, 119 L.Ed.2d 232, *reh. denied,* —— U.S. ——, 113 S.Ct. 11, 120 L.Ed.2d 939 (1992); *Boltz,* 806 P.2d at 1124.

**43.** Although I continue to believe the use of unadjudicated prior offenses is not proper, the majority of the Court has allowed proof of unadjudicated offenses to support this aggravating circumstance. *Paxton v. State,* 867 P.2d 1309, 1332 (Okl.Cr.1993) (Chapel, J., dissenting).

the issue of remorse is proper.[44] The prosecutor's comment did not constitute plain error.

■ Hooker also complains about the admission of photographs showing him smiling when he was arrested. At trial, Hooker objected to this evidence on the grounds that it was irrelevant and it violated his right to remain silent. Hooker does not make these objections on appeal but rather complains about the photographs in the context of the improper use of lack of remorse as a non-statutory aggravating circumstance. Where a defendant objects on a specific ground at trial, this Court will not entertain an objection on a different ground on appeal.[45] No relief is warranted under this proposition of error.

■ In Proposition XII, Hooker objects to the admission of color photographs of Stokes and Morgan. Some of the photographs depict the scene at the Hooker–Stokes home and some were taken at the medical examiner's office. We find that the trial court did not abuse its discretion in admitting these photographs.[46]

■ In his thirteenth proposition of error, Hooker states that, through no fault of defense counsel, the jury was not instructed on all mitigating evidence. Hooker initially complains that the trial court erred in not providing Hooker's proposed second stage instructions 4 and 5. Instruction 4 concerned the mitigating evidence that Hooker was intoxicated at the time of the offense. Instruction 5 concerned the mitigating evidence that Hooker was under extreme emotional distress at the time of the offense. Both of these instructions advised the jury that Hooker's sentence should be mitigated due to his emotional state and intoxication. Although the trial court refused to give these two instructions, Instruction 11, which was provided to the jury, advised the jury that among the mitigating circumstances offered by Hooker were that Hooker was under the influence of alcohol and PCP at the time of the offense and that the murders were committed as a result of jealousy and anger. The instructions, taken as a whole, sufficiently and properly advised the jury about the mitigating evidence offered by Hooker.

■ Hooker also complains that the trial court improperly prevented him from presenting testimony about his efforts to stop using PCP. A jury should not be precluded from considering any mitigating evidence regarding a defendant's character or record or any circumstance of the crime which mitigates against death.[47] While it would have been more prudent to allow the evidence of Hooker's efforts to end his drug addiction, the evidence supporting the death penalty is overwhelming and any error in excluding this evidence is harmless.

■ Hooker further contends the trial court improperly limited the testimony of Dr. Vicary, a defense expert witness.[48] We disagree with Hooker's characterization of defense counsel's examination of Dr. Vicary. Dr. Vicary was able to testify fully about his opinions and conclusions regarding Hooker. This proposition of error is without merit.

44. *Smith*, 727 P.2d at 1373–1374; *Curliss v. State*, 692 P.2d 559 (Okl.Cr.1984).

45. *Trim v. State*, 808 P.2d 697, 699 (Okl.Cr. 1991).

46. *Stout, supra.*

47. *Skipper v. South Carolina*, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986); *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).

48. Hooker also contends the trial court's comments regarding Hooker's expert witness from California were improper. This Court allows a trial court wide latitude in conducting the trial. Here, the trial court advised the jury that the issue of whether there were aggravating circumstances was a matter for the jury and the court would not allow the defense expert to preempt the role of the jury in determining this question. These comments did not reveal the judge's personal opinion about the facts at issue, and it is hard to see how Hooker was prejudiced by these remarks. The trial judge's comments do not constitute error.

In Proposition XIV, Hooker argues that the trial court erred in excluding the testimony of Dr. Wanda Draper, a professor in the Department of Psychiatry and Behavioral Science at the College of Medicine at the University of Oklahoma Health Sciences Center. Hooker contends that Dr. Draper would have testified that, based on her research and the scientific literature, the children of Hooker and Stokes, would suffer more if their father was sentenced to death than if he was sentenced to life imprisonment without the possibility of parole. Draper admitted she had not personally examined the children and her testimony was based on research and information which defense counsel furnished her about the children. The trial court found Dr. Draper's testimony irrelevant. We agree. Hooker's expert witness did not interview or examine the children. The witness' theoretical conclusions are not relevant to Hooker's character or the circumstances of this particular crime.

In addition, Hooker requested that an economist be allowed to testify on the cost-effectiveness of a life sentence as opposed to the death penalty. This evidence, although it may be relevant to policy-makers, does not fall within the category of mitigating evidence.[49] The trial court did not err in excluding such evidence.

In his fifteenth proposition of error, Hooker asserts that several incidents of alleged prosecutorial misconduct warrant reversal of his convictions or modification of his sentences. We have reviewed the prosecutor's comments and find that some of the comments about which Hooker complains do not rise to the level of prosecutorial misconduct.[50] However, other comments made by the prosecutor during second stage closing argument are far more troubling. First, the prosecutor argued to the jury "do justice in this case. Do justice. And you do that only by bringing back two verdicts of death in this case." While Hooker did not lodge a contemporaneous objection to this comment, the prosecutor's comments come perilously close to argument which was condemned by this Court in *McCarty v. State*.[51] Second, the prosecutor responded to defense counsel's pleas of mercy by telling the jury he was sorry about the "guilt trip laid on [the jury]" by Hooker's counsel. Defense counsel objected, the objection was sustained and the jury was admonished to disregard the statement. Nonetheless, the prosecutor tried to continue this line of argument until the trial court halted further attempts to do so and admonished the jury to disregard the prosecutor's comments. Finally, the prosecutor argued "I ask you not to kill their client. You can't. All you can do is bring in a verdict of death ..." (T. V at 196) Defense counsel objected to the comment and the trial court sustained the objection. Such comments push the boundaries of permissible argument and we do not condone the prosecutor's disregard of the law and the trial court's warnings. Nonetheless, we find in this case that the comments were not verdict determinative and, in light of the overwhelming evidence supporting the imposition of the death penalty, these comments must be considered harmless. Accordingly, modification of Hooker's sentence is not warranted.

In Proposition XVI, Hooker argues that the Oklahoma death penalty statute is unconstitutional because it gives the prosecutor too much discretion in deciding whether to seek the death penalty. Hooker cites

---

**49.** See *Skipper, supra; Eddings, supra; Lockett, supra.*

**50.** Hooker complains the prosecutor misstated the law on intent during the first stage of trial. Although the prosecutor did not use the term "with malice aforethought" in his argument to the jury, he referred the jury to the jury instructions, which correctly set out the intent element. Hooker also alleges the prosecutor did not adequately explain the aggravating circumstance of heinous, atrocious or cruel to the jury. However, there was no objection to this alleged error and the jury instructions clearly explained the heinous, atrocious and cruel aggravating circumstance. These comments do not constitute error.

**51.** 765 P.2d 1215 (Okl.Cr.1988).

*Silagy v. Peters,*[52] to support his argument. The district court's opinion, on which Hooker relies, was overruled in *Silagy v. Peters.*[53] The Seventh Circuit concluded that prosecutorial discretion in deciding whether or not to seek the death penalty did not violate the Eighth Amendment.[54] We agree with the analysis of the Seventh Circuit and find this proposition is without merit.

In his eighteenth proposition of error, Hooker argues that the anti-sympathy instruction, which was given to the jury during the first stage of the trial and incorporated into the second stage instructions, was constitutionally invalid. As Hooker admits, the key case he relies upon, *Parks v. Brown,*[55] was overturned in *Saffle v. Parks.*[56] *Saffle v. Parks* concluded that the anti-sympathy instruction in that case was constitutionally valid. On remand, the Tenth Circuit affirmed the defendant's death sentence.[57] The anti-sympathy instruction in Hooker's case is identical to the instruction in *Fox*[58] and *Fisher v. State.*[59] In both of these cases, this Court found no error in the anti-sympathy instruction. Likewise, we find no error with the anti-sympathy instruction used in Hooker's case.[60]

In Proposition XIX, Hooker argues that the trial court erred in failing to provide an instruction on the presumption of life during the second stage of the trial. Instruction 4 instructed the jury that Hooker had entered a plea of not guilty to all the allegations in the bill of particulars and that the State bore the burden of proving the allegations beyond a reasonable doubt. Instruction 4 further stated that Hooker was innocent of all the charges and this presumption continued unless guilt was established beyond a reasonable doubt and that if the jury entertained a doubt as to the charges it was to return a sentence of life or life without parole. Jury instruction 9 advised that unless the aggravating circumstances outweighed the mitigating circumstances the death penalty could not be imposed.[61] These instructions properly set out the State's burden of proof and the standards for weighing the aggravating and mitigating circumstances.[62] Such instructions were proper and sufficient.

In Proposition XX, Hooker contends the instructions on the burden of proof in weighing aggravating and mitigating circumstances was erroneous. This Court reviewed similar instructions in *Fox*[63] and found such instructions proper. Accordingly, Hooker's proposition XX is without merit.

In his twenty-first proposition of error, Hooker contends that the instructions are defective because they fail to adequately advise the jury that they could impose life or life without parole even if the aggravating circumstances outweigh the mitigating circumstances. Hooker's contentions are without merit. The instructions given in this

**52.** 713 F.Supp. 1246 (C.D.Ill.1989).

**53.** 905 F.2d 986 (7th Cir.1990), *cert. denied,* 498 U.S. 1110, 111 S.Ct. 1024, 112 L.Ed.2d 1106, *reh. denied,* 499 U.S. 984, 111 S.Ct. 1642, 113 L.Ed.2d 737 (1991).

**54.** *Id.*

**55.** 860 F.2d 1545 (10th Cir.1988).

**56.** 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990).

**57.** *Parks v. Saffle,* 925 F.2d 366 (10th Cir.1991), *cert. denied,* 502 U.S. 874, 112 S.Ct. 213, 116 L.Ed.2d 171, *reh. denied,* 502 U.S. 1001, 112 S.Ct. 627, 116 L.Ed.2d 648 (1991).

**58.** *Supra.*

**59.** 845 P.2d 1272 (Okl.Cr.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3014, 125 L.Ed.2d 704 (1986).

**60.** *See also Revilla, supra; Ellis, supra.*

**61.** *See Walker v. State,* 723 P.2d 273, 284 (Okl.Cr. 1986), *cert. denied,* 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 600 (1986).

**62.** *See Malone, supra; Allen v. State,* 871 P.2d at 103; *Johnson v. State,* 731 P.2d 993, 1004 (Okl. Cr.), *cert. denied,* 484 U.S. 878, 108 S.Ct. 35, 98 L.Ed.2d 167 (1987).

**63.** *Supra.*

case comport with the law as set forth in *Johnson.*[64] In *Johnson,* the defendant asserted that the trial court erred in not giving an instruction that the jury may decline to impose death even if the aggravating circumstances outweigh the mitigating circumstances. This Court concluded that this concept "is subsumed within an instruction that if the jury finds one or more aggravating circumstances they may consider imposing the death penalty, i.e., that they could, but do not *have* to, impose death in that event." [65] Accordingly, the instructions given to the jury in Hooker's case were adequate and proper.

▬ In addition, Hooker complains the jury was not advised that the judge could impose a life sentence if they could not reach a unanimous agreement on sentencing. This argument has been presented to this Court in other cases and we have found that instructions of this nature are not necessary or proper.[66] Likewise, we find Hooker's claim is meritless.

▬ In Proposition XXII, Hooker complains that the instructions erroneously permitted the jury to ignore the mitigating evidence. Hooker asserts that the instructions on mitigating evidence should have made consideration of mitigating evidence mandatory. There are no constitutionally required standards for balancing aggravating and mitigating circumstances.[67] We find that the trial court's instructions, taken as a whole, were proper and comported with state and federal constitutions.[68]

▬ In Proposition XXIV, Hooker argues Oklahoma's death penalty statute violates the Oklahoma constitution by requiring the jury's general verdict be accompanied by a

list of the aggravating circumstances found by the jury. This argument was considered and rejected by this Court in the petition for rehearing filed in *Romano.*[69] We similarly reject Hooker's argument.

In Proposition XXV Hooker addresses the appropriateness of reweighing the mitigating and aggravating evidence if any of the aggravating circumstance should be found to be defective. As this Court has found that none of the aggravating circumstances is invalid, this proposition of error is not at issue.

## MANDATORY SENTENCE REVIEW

▬ Pursuant to 21 O.S.Supp.1985, § 701.13(C), we must determine whether (1) the sentences of death were imposed under the influence of passion, prejudice or any other arbitrary factor, and (2) the evidence supports the trial judge's finding of a statutory aggravating circumstance as enumerated in 21 O.S.Supp.1981, § 701.12. The jury found the existence of four aggravating circumstances: (1) previous conviction of a felony involving the use or threat of violence to another; (2) knowingly creating a great risk of death to more than one person; (3) the murder was especially heinous, atrocious or cruel; and (4) the existence of a probability that Hooker would commit criminal acts of violence constituting a continuing threat to society. We find the evidence supports the existence of all four aggravating circumstances. Upon careful consideration of all of the mitigating evidence and the four aggravating circumstances, we find both sentences of death to be substantiated by the record and appropriate. Based on the record, we cannot say the jury was influenced by passion, prejudice, or any other arbitrary factor contrary to 21 O.S.Supp.1985, § 701.13(C), in finding the aggravating circumstances outweigh the mitigating circumstances and in

**64.** *Supra.*

**65.** *Id.* at 1003 (emphasis in original). *See Malone,* 876 P.2d at 715; *Allen,* 871 P.2d at 102; *Brown,* 871 P.2d at 73; *Fisher,* 845 P.2d at 1278.

**66.** *Trice,* 853 P.2d at 216 (such instructions "could distract the jury during its performance

of its duty to assess punishment"); *see Boltz, supra; Johnson, supra.*

**67.** *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983).

**68.** *See Revilla, supra; Trice, supra.*

**69.** 847 P.2d at 384–385.

imposing the sentence of death. Accordingly, we find no error warranting reversing Hooker's convictions or modifying the sentences of death. The trial court's Judgment and Sentence for First Degree Murder is **AFFIRMED.**

LUMPKIN, P.J., JOHNSON, V.P.J., and LANE and STRUBHAR, JJ., concur.

### ORDER DENYING PETITION FOR REHEARING AND DIRECTING ISSUANCE OF MANDATE

January 23, 1995

John Michael Hooker was tried by jury before the Honorable Leamon Freeman in the District Court of Oklahoma County, Case No. CRF–88–1939. He was convicted of two counts of First Degree Malice Aforethought Murder in violation of 21 O.S.1991, § 701.7. During the sentencing portion of Hooker's capital trial, the jury found (1) Hooker was previously convicted of a felony involving the use or threat of violence to the person; (2) Hooker knowingly created a great risk of death to more than one person; (3) the murder was especially heinous, atrocious, or cruel; and (4) there was a probability that Hooker would commit criminal acts of violence that would constitute a continuing threat to society. The jury sentenced Hooker to death for both murder convictions.

By published opinion issued on November 14, 1994, this Court affirmed Hooker's convictions and sentences. Hooker is now before the Court on a Petition for Rehearing, Rule 3.14, *Rules of the Court of Criminal Appeals,* 22 O.S.Supp.1993, Ch. 18, App.

According to Rule 3.14, a Petition for Rehearing shall be filed for two reasons only:

(1) That some question decisive of the case and duly submitted by the attorney of record has been overlooked by the Court, or

(2) That the decision is in conflict with an express statute or controlling decision to which the attention of this Court was not called either in the brief or in oral argument.

██ In his petition for rehearing and supplement to petition for rehearing, Hooker raises five propositions. These propositions fail to meet the criteria set forth in Rule 3.14.

Accordingly, these propositions will not be addressed.

**IT IS THEREFORE THE ORDER OF THE COURT** that the Petition for Rehearing is **DENIED.** The Clerk of the Court is directed to issue the mandate forthwith.

**IT IS SO ORDERED.**

/s/ Charles A. Johnson
CHARLES A. JOHNSON
Presiding Judge
/s/ Charles S. Chapel
CHARLES S. CHAPEL
Vice–Presiding Judge
/s/ Gary L. Lumpkin
GARY L. LUMPKIN
Judge
/s/ James F. Lane
JAMES F. LANE
Judge
/s/ Reta M. Strubhar
RETA M. STRUBHAR
Judge